**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

UNITED STATES OF AMERICA,

        Plaintiff,

                                 Case No.  23-CV-355

    v.

TOWN OF LAC DU FLAMBEAU,

        Defendant.

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant Town of Lac du Flambeau, by and through its attorneys, von Briesen & Roper, s.c., hereby answers and responds to Plaintiff's complaint as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to the federal common law of trespass to protect land to which the United States holds title in trust for the Band and the Allottees, seeking declaratory relief, damages, and ejectment to remedy the Town of Lac du Flambeau's ("Town") intentional and unauthorized use and occupancy of that land as part of the Town's road system.

**ANSWER:**  Defendant admits that Plaintiff seeks the relief alleged, but denies that Plaintiff is entitled to such relief; moreover, Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same.

2. The United States, acting through the Bureau of Indian Affairs ("BIA"), holds fee title to the lands at issue for the benefit of the Band and the Allottees.  In its capacity as trustee, the BIA in the 1960s granted either Ronald Niske and Northwoods Land Office, Inc.

("Northwoods") or T.J. Patterson and Patterson Brothers, Inc. ("Patterson") five separate easements for right-of-way ("ROW") for roads over and across tribal trust and allotted lands within the exterior boundary of the Lac du Flambeau Reservation ("Reservation"), each for a term of fifty years.  The BIA granted the ROWs, with the requisite consent of the Band and the Allottees, pursuant to the Indian Right-of-Way Act, 25 U.S.C. §§ 323-328, and the implementing regulations found in 25 C.F.R. Part 169 ("ROW Act").  At some point during the fifty-year term, the United States is informed and believes, Northwoods or Patterson assigned each ROW to the Town.

**ANSWER:**   Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth therein, and therefore denies the same.

3.      The term of the ROW for Elsie Lake Lane, which began on October 23, 1961, expired on October 22, 2011.  The term of the ROW for East Ross Allen Lake Lane, which began on March 17, 1964, expired on March 16, 2014.  The terms of the two ROWs for Annie Sunn Lane, which began on April 28, 1964 and February 19, 1968, respectively, expired on April 27, 2014 and February 18, 2018, respectively.  And the term of the ROW for Center Sugarbush Lane, which began on July 28, 1964, expired on July 27, 2014.  The Town failed to submit timely renewal applications for the ROWs and has not applied for new ROWs.  The Town continues to use the Band's and Allottees' lands unlawfully, without a valid grant or authorization from the BIA.

**ANSWER:**   Defendant asserts that the allegations contained therein constitute legal conclusions to which no response is required; however, to the extent said allegations are deemed factual, Defendant denies the same.

4.      In remedy for the Town's continuing trespass on lands to which the United States holds title for the benefit of the Band and the Allottees, the United States brings this action.  The United States prefers a negotiated resolution that would allow the aforementioned roads to have their ROWs renewed pursuant to the ROW Act and remain part of the Town's road system.  If a negotiated resolution is not possible, the United States seeks all just and appropriate remedies, including, but not limited to, a declaration that the Town is in trespass; damages or mesne profits in compensation for the past unlawful use and occupancy; and, if the Town refuses to comply with the ROW Act, ejectment from further unauthorized and unlawful use of the Band's and Allottees' land and full restoration and remediation of the property.

**ANSWER:**      Defendant admits that Plaintiff seeks the process and relief contained therein, but denies it is entitled to such process and relief.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1345 (United States as Plaintiff) because the action arises under the Constitution, treaties, and laws of the United States, and is brought by the United States.

**ANSWER:**      Defendant admits.

6.      The allegations of this Complaint give rise to an actual controversy within the meaning of 28 U.S.C. §§ 2201-2202 (Declaratory Judgments).

**ANSWER:**      Defendant admits.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is situated in the judicial district and most, if not all, of the events giving rise to this action occurred there.

**ANSWER:**      Defendant admits.

## PARTIES

8.     Plaintiff is the United States of America, suing on its own behalf in its sovereign governmental capacity and in its capacity as trustee for the Band and the Allottees.

**ANSWER:**   Defendant admits Plaintiff is the United States of America, but lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth therein, and therefore denies the same.

9.     The Lac du Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation of Wisconsin is an Indian Tribe recognized by the Secretary of the Interior and eligible for funding and services from the United States.  88 Fed. Reg. 2112, 2113 (Jan. 12, 2023).

**ANSWER:**   Defendant admits.

10.     Defendant Town of Lac du Flambeau is a municipal corporation situated in Vilas County, Wisconsin.

**ANSWER:**   Defendant admits.

## FACTUAL ALLEGATIONS

### A.     The Lac du Flambeau Reservation

11.     The Reservation is the permanent homeland of the Band.  The Reservation was established in the 1854 Treaty with the Chippewa, 10 Stat. 1109.

**ANSWER:**   Defendant admits that the Reservation was established in the 1854 Treaty with the Chippewa, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same.

12.     The Reservation was subject to allotment under the Indian General Allotment Act, also known as the Dawes Act.  By 1901, 578 allotments had been distributed, and approximately 45,000 acres had passed into fee simple ownership.

4

**ANSWER:**     Defendant admits that the Reservation was subject to allotment under the Indian General Allotment Act, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same.

13.     In 1934, the passage of the Indian Reorganization Act ("IRA") reversed the allotment system, and tribes held elections to decide whether to reorganize their governments.  In 1935, the Band voted to organize under the IRA and adopted an IRA constitution in 1936.

**ANSWER:**     Defendant admits that the IRA was enacted in 1934, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same

14.     Wisconsin became a territory in 1836 and remained in that form until joining the Union as the thirtieth State on May 29, 1848.  Until 1875, the area now known as Vilas County was part of Marathon County.  The area subsequently became part of Lincoln County, until 1885, and then part of Oneida County, until 1893.  On April 12, 1893, Vilas County, with its current geographical boundaries, was created.

**ANSWER:**     Defendant admits.

15.     The Town was established on June 5, 1900.  At that time, the Township extended north to the Michigan border.  Following divisions to the Town of Presque Isle in 1907 and the Town of Manitowish Waters in 1928, the Town assumed its present boundaries.

**ANSWER:**     Defendant admits.

16.     Today, the Reservation consists of approximately 86,600 acres of land.  The United States holds legal title to 39,403 acres of land held in trust for the Band, and to 18,532 acres of allotted land in trust for individual Indian beneficial owners, including the Allottees.

**ANSWER:**   Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth therein, and therefore denies the same.

17.    Due to allotment and the subsequent issuance of fee patents for some of the allotments, portions of the lakefront property on the Reservation have transferred to private ownership.  Tracts of privately owned, non-Indian land thus lie amidst the Band's and Allottees' lands constituting the subject matter of this Complaint.

**ANSWER:**   Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations as they relate to the Band's and Allottees' lands as set forth therein, and therefore denies the same, but admits the reminder of the allegations contained therein.

**B.     The Expired ROWs**

*__Annie Sunn Lane__*

18.    Exercising its authority under the ROW Act, the BIA approved three ROWs granted to Northwoods for the construction and use of Annie Sunn Lane across land owned by the United States in trust for the Band and fifty-six Allottees.  Two of these ROWs are at issue in this case.

**ANSWER:**   Defendant admits that the BIA approved three ROWs for the construction and use of Annie Sunn Lane and that those ROWs are at issue in this case, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same.

19.    On April 28, 1964, the BIA approved ROW 432-2575964 for a segment of Annie Sunn Lane (the "First Annie Sunn Lane ROW").  A copy of ROW 432-2575964 is attached hereto as Exhibit 1 and incorporated by reference herein.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 1 speaks for itself and denies any allegations inconsistent therewith.

20.     The term of the First Annie Sunn Lane ROW was fifty years, beginning April 28, 1964, and expiring April 27, 2014.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 1 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

21.     The United States is informed and believes, and on that basis alleges, that Northwoods assigned the First Annie Sunn Lane ROW to the Town at some point during the ROW term.

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

22.     The First Annie Sunn ROW expired by its own terms on April 27, 2014.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 1 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

23.     The Town never applied to renew the First Annie Sunn ROW prior to its expiration; the Band and the Allottees never consented to renewal of the First Annie Sunn ROW; and the BIA never granted a renewal.

**ANSWER:**     Notwithstanding Defendant's contention that renewals are not required, Defendant admits that it has not directly sought renewal of the ROW; however, Defendant has indirectly sought renewal of the ROW through the affected property owners, who commenced the process to obtain renewals on January 4, 2017; the Band has repeatedly blocked this process and demanded that the property owners pay $20,000,000.00 to obtain new ROWs.

24.     In a letter dated February 6, 2014, the BIA notified local residents that the First Annie Sunn ROW would expire by its terms on April 27, 2014.

**ANSWER:**     Defendant admits.

25.     On February 19, 1968, the BIA approved ROW 432-1521 for a second segment of Annie Sunn Lane (the "Second Annie Sunn Lane ROW"). A copy of ROW 432-1521 is attached hereto as Exhibit 2 and incorporated by reference herein.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 2 speaks for itself and denies any allegations inconsistent therewith.

26.     The term of the Second Annie Sunn Lane ROW was fifty years, beginning February 19, 1968, and expiring February 18, 2018.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 2 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same; moreover, the Second Annie Sunn Lane ROW contains no term limiting its effectiveness to fifty years.

27.     The United States is informed and believes, and on that basis alleges, that Northwoods assigned the Second Annie Sunn Lane ROW to the Town at some point during the ROW term.

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

28.     The Second Annie Sunn Lane ROW expired by its own terms on February 18, 2018.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 2 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the

extent a response is required, Defendant denies the same; moreover, the Second Annie Sunn Lane ROW contains no term limiting its effectiveness to fifty years.

29.     The Town never applied to renew the Second Annie Sunn Lane ROW prior to its expiration; the Band and the Allottees never consented to the renewal of the Second Annie Sunn Lane ROW; and the BIA never granted a renewal.

**ANSWER:**     Notwithstanding Defendant's contention that renewals are not required, Defendant admits that it has not directly sought renewal of the ROW; however, Defendant has indirectly sought renewal of the ROW through the affected property owners, who commenced the process to obtain renewals on January 4, 2017; the Band has repeatedly blocked this process and demanded that the property owners pay $20,000,000.00 to obtain new ROWs.

### *Center Sugarbush Lane*

30.     Exercising its authority under the ROW Act, the BIA approved ROW 432-4391964 granting an easement to Northwoods for the construction and use of Center Sugarbush Lane across land owned by the United States in trust for the Band and fifteen Allottees (the "Center Sugarbush Lane ROW").   A copy of ROW 432-4391964 is attached hereto as Exhibit 3 and incorporated by reference herein.

**ANSWER:**     Defendant admits that the BIA approved a ROW for the construction and use of Center Sugarbush Lane, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same; moreover, Defendant affirmatively asserts that Exhibit 3 speaks for itself and denies any allegations inconsistent therewith.

31.     The term of the Center Sugarbush Lane ROW was fifty years, beginning July 28, 1964, and expiring July 27, 2014.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 3 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

32.    The United States is informed and believes, and on that basis alleges, that Northwoods assigned the Center Sugarbush Lane ROW to the Town at some point during the ROW term.

**ANSWER:**   Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

33.    In a letter dated December 4, 2013, the BIA notified local residents that the Center Sugarbush Lane ROW would expire by its terms on July 27, 2014.

**ANSWER:**   Defendant admits.

34.    In a letter dated January 2, 2014, the Town informed residents of Center Sugarbush Lane that the Town was aware of the impending expiration of the Center Sugarbush Lane ROW and that "[t]he Town Board intends to protect the road as a Town Road."  The letter thus requested that residents "not engage in further communication with the BIA" about renewing the Center Sugarbush Lane ROW "because it is important that all communications come through the Town Board and its attorney."

**ANSWER:**   Defendant admits.

35.    The Center Sugarbush Lane ROW expired by its own terms on July 27, 2014.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 3 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

36.     The Town never applied to renew the Center Sugarbush Lane ROW prior to its expiration; the Band and the Allottees never consented to renewal of the Center Sugarbush Lane ROW; and the BIA never granted a renewal.

**ANSWER:**   Notwithstanding Defendant's contention that renewals are not required, Defendant admits that it has not directly sought renewal of the ROW; however, Defendant has indirectly sought renewal of the ROW through the affected property owners, who commenced the process to obtain renewals on January 4, 2017; the Band has repeatedly blocked this process and demanded that the property owners pay $20,000,000.00 to obtain new ROWs.

### *East Ross Allen Lake Lane*

37.     Exercising its authority under the ROW Act, the BIA approved ROW 432-1869964 granting an easement to Northwoods for the construction and use of East Ross Allen Lake Lane across land owned by the United States in trust for the Band (the "East Ross Allen Lake Lane ROW").   A copy of ROW 432-1869964 is attached hereto as Exhibit 4 and incorporated by reference herein.

**ANSWER:**   Defendant admits that the BIA approved a ROW for the construction and use of East Ross Allen Lake Lane, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same; moreover, Defendant affirmatively asserts that Exhibit 4 speaks for itself and denies any allegations inconsistent therewith.

38.     The term of the East Ross Allen Lake Lane ROW was fifty years, beginning March 17, 1964, and expiring March 16, 2014.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 4 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

11

39.     The United States is informed and believes, and on that basis alleges, that Northwoods assigned the East Ross Allen Lake Lane ROW to the Town at some point during the ROW term.

**ANSWER:**   Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

40.     In a letter dated December 5, 2013, the BIA notified local residents that the East Ross Allen Lake Lane ROW would expire by its terms on March 16, 2014.

**ANSWER:**   Defendant admits.

41.     In a letter dated January 2, 2014, the Town informed residents of East Ross Allen Lake Lane that the Town was aware of the impending expiration of the East Ross Allen Lake Lane ROW and that "[t]he Town Board intends to protect the road as a Town Road."  The letter thus requested that residents "not engage in further communication with the BIA" about renewing the ROW "because it is important that all communications come through the Town Board and its attorney."

**ANSWER:**   Defendant admits.

42.     The East Ross Allen Lake Lane ROW expired by its own terms on March 16, 2014.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 4 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

43.     The Town never applied to renew the East Ross Allen Lake Lane ROW prior to its expiration; the Band never consented to renewal of the East Ross Allen Lake Lane ROW; and the BIA never granted a renewal.

**ANSWER:**   Notwithstanding Defendant's contention that renewals are not required, Defendant admits that it has not directly sought renewal of the ROW; however, Defendant has indirectly sought renewal of the ROW through the affected property owners, who commenced the process to obtain renewals on January 4, 2017; the Band has repeatedly blocked this process and demanded that the property owners pay $20,000,000.00 to obtain new ROWs.

### *Elsie Lake Lane*

44.   Exercising its authority under the ROW Act, the BIA approved ROW 432-11462961 granting an easement to Patterson for the construction and use of Elsie Lake Lane across land owned by the United States in trust for the Band and seven Allottees (the "Elsie Lake Lane ROW").  A copy of ROW 432-11462961 is attached hereto as Exhibit 5 and incorporated by reference herein.

**ANSWER:**   Defendant admits that the BIA approved a ROW for the construction and use of Elsie Lake Lane, but lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations set forth therein, and therefore denies the same; moreover, Defendant affirmatively asserts that Exhibit 5 speaks for itself and denies any allegations inconsistent therewith.

45.   The term of the Elsie Lake Lane ROW was fifty years, beginning October 23, 1961, and expiring October 22, 2011.

**ANSWER:**   Defendant affirmatively asserts that Exhibit 5 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same; moreover, the Elsie Lake Lane ROW contains a provision that notes it is "subject to renewal for a like term upon compliance with applicable regulations."

46.     The United States is informed and believes, and on that basis alleges, that Patterson assigned the Elsie Lake Lane ROW to the Town at some point during the ROW term.

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

47.     The Elsie Lake Lane ROW expired by its own terms on October 22, 2011.

**ANSWER:**     Defendant affirmatively asserts that Exhibit 5 speaks for itself, and that allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same; moreover, the Elsie Lake Lane ROW contains a provision that notes it is "subject to renewal for a like term upon compliance with applicable regulations."

48.     The Town never applied to renew the Elsie Lake Lane ROW prior to its expiration; the Band and the Allottees never consented to renewal of the Elsie Lake Lane ROW; and the BIA never granted a renewal.

**ANSWER:**     Notwithstanding Defendant's contention that renewals are not required, Defendant admits that it has not directly sought renewal of the ROW; however, Defendant has indirectly sought renewal of the ROW through the affected property owners, who commenced the process to obtain renewals on January 4, 2017; the Band has repeatedly blocked this process and demanded that the property owners pay $20,000,000.00 to obtain new ROWs.

**C.     The Town of Lac du Flambeau's Continuing Trespass**

49.     At various times since expiration of the First Annie Sunn Lane ROW, the Second Annie Sunn Lane ROW, the Center Sugarbush Lane ROW, the East Ross Allen Lake Lane ROW, and the Elsie Lake Lane ROW, the Town, local residents, and title insurance companies have engaged in negotiations with the Band to resolve the issue of the expired ROWs.  The

parties have not reached an agreement to bring any of the ROWs into compliance with Federal law.

**ANSWER:**   Defendant admits that the parties identified therein have engaged in negotiations; but denies any implication that Defendant has acted wrongfully and further states that the remainder of the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

50.   On or about January 19, 2023, the Band notified the Town, local residents, and title insurance companies that because negotiations to resolve the issue of the expired ROWs were stalled, the Band intended, beginning January 31, 2023, to limit public access over and across those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees.

**ANSWER:**   Defendant admits that the Band made such a notification, but denies that the Band has or had the authority to limit public access to the roads at issue.  Defendant further states that the remainder of the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

51.   On January 31, 2023, the Band began limiting public access over and across those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees, and the Band continued to limit public access over and across those roads until March 13, 2023.

**ANSWER:**   Defendant admits that the Band began limiting public access to the roads at issue, but denies that the Band has or had the authority to do so.  Defendant further states that

the remainder of the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

52.     On February 2, 2023, the Band formally requested the BIA's assistance in remedying the Town's unauthorized use and occupancy of those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees.

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

53.     On March 13, 2023, the Band reopened those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees to public access pursuant to an agreement between the Band and the Town providing that the Band would permit temporary public access over and across those roads for up to ninety days.

**ANSWER:**     Defendant admits that on March 13, 2023, the Band reopened those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane for public access pursuant to an agreement between the Band and the Town providing that, in exchange for monthly payments from Defendant, the Band would permit temporary public access over and across those roads for up to ninety days, but denies any implication that, by entering into an agreement with the Band, Defendant has agreed with the position taken by the Band or Plaintiff.  Defendant further states that the remainder of the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

54.     On or about March 15, 2023, the Band's Council formally requested that the BIA remove those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees from the National Tribal Transportation Facilities Inventory ("Inventory") pursuant to 25 C.F.R. § 170.444(b)(1). Indian tribes become eligible to receive funding from the Tribal Transportation Program for planning, construction, improvement, and maintenance of roads that tribes choose to list on the Inventory. The Band never expended any federal transportation funds on Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane, and the Council decided to remove the roads from the Inventory.

**ANSWER:**     Defendant asserts that the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.  Defendant further disputes that 25 C.F.R. § 170.444(b)(1) is the appropriate regulation to accomplish such a removal, and such action is pending review in this Court.  *See Town of Lac du Flambeau v. Bryan Newland, et al.*, No. 23-CV-541 (W.D. Wis.).

55.     On March 30, 2023, the BIA notified the Band that, effective March 24, 2023, the BIA approved the Band's update request and removed Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane from the Inventory pursuant to 25 C.F.R. § 170.444(b)(3).  The BIA first determined pursuant to 25 C.F.R. § 170.444(b)(2)(i) that the Band had not expended any federal transportation funds on the roads and otherwise validated the Band's request.

**ANSWER:**   Defendant asserts that the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.   Defendant further disputes that the action taken by the BIA was proper, and such action is pending review in this Court.  *See Town of Lac du Flambeau v. Bryan Newland, et al.*, No. 23-CV-541 (W.D. Wis.).

56.     Notwithstanding the Band's and the Town's temporary access agreement, the Town has not brought the portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees into conformity with the requirements of the ROW Act, and as a result continued use of the roads by the Town constitutes a trespass.

**ANSWER:**   Defendant asserts that the allegations contained therein constitute legal conclusions to which no response is required; to the extent a response is required, Defendant denies the same.

57.     Since the expiration of the First Annie Sunn Lane ROW, the Second Annie Sunn Lane ROW, the Center Sugarbush Lane ROW, the East Ross Allen Lake Lane ROW, and the Elsie Lake Lane ROW, the Town has operated, and continues to operate, those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees as public roads in violation of the requirements of the ROW Act.

**ANSWER:**   Defendant denies.

58.     Notwithstanding expiration of the First Annie Sunn Lane ROW, the Second Annie Sunn Lane ROW, the Center Sugarbush Lane ROW, the East Ross Allen Lake Lane ROW, and

the Elsie Lake Lane ROW, the Town, based on the most recently available records of the State of Wisconsin Department of Transportation, holds itself out as the public authority responsible for operating and maintaining Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane, including those portions of the roads situated on land owned by the United States in trust for the Band and the Allottees.

**ANSWER:**   Plaintiff fails to identify what records of the State of Wisconsin Department of Transportation it is referring to, and therefore, Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations set forth therein, and therefore denies the same.

59.   The Town's use and occupation of those portions of Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane situated on land owned by the United States in trust for the Band and the Allottees, as described above, has been and continues to be knowing, intentional, willful, without valid consent, and contrary to Federal law.

**ANSWER:**   Defendant denies.

## FIRST CLAIM FOR RELIEF
### Trespass

60.   The United States incorporates by reference each of the preceding paragraphs above as though fully set forth herein.

**ANSWER:**   Defendant realleges and incorporates herein by reference each and every answer to each allegation contained in the foregoing paragraphs of this Answer.

61.   Since at least October 23, 2011, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Elsie Lake Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.  As a result of its unauthorized and continuing unlawful use, the Town has committed

and is now committing a continuing willful trespass on the Band's and Allottees' lands, to which the United States holds title for the benefit of the Band and the Allottees.

**ANSWER:**   Defendant denies.

62.   Since at least March 17, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's lands described in the East Ross Allen Lake Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.  As a result of its unauthorized and continuing unlawful use, the Town has committed and is now committing a continuing willful trespass on the Band's lands, to which the United States holds title for the benefit of the Band.

**ANSWER:**   Defendant denies.

63.   Since at least April 28, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the First Annie Sunn Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.  As a result of its unauthorized and continuing unlawful use, the Town has committed and is now committing a continuing willful trespass on the Band's and Allottees' lands, to which the United States holds title for the benefit of the Band and the Allottees.

**ANSWER:**   Defendant denies.

64.   Since at least July 28, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Center Sugarbush Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.  As a result of its unauthorized and continuing unlawful use, the Town has committed and is now committing a continuing willful trespass on the Band's and Allottees' lands, to which the United States holds title for the benefit of the Band and the Allottees.

**ANSWER:**    Defendant denies.

65.    Since at least February 19, 2018, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Second Annie Sunn Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.  As a result of its unauthorized and continuing unlawful use, the Town has committed and is now committing a continuing willful trespass on the Band's and Allottees' lands, to which the United States holds title for the benefit of the Band and the Allottees.

**ANSWER:**    Defendant denies.

66.    As a direct and proximate result of the Town's continuing willful trespass, the Town has denied the Band and the Allottees full enjoyment of their property interests and damaged and continues to damage the Band and the Allottees and their land, and the governmental interests of the United States, and will continue to do so unless and until the trespass is remedied.

**ANSWER:**    Defendant denies.

## SECOND CLAIM FOR RELIEF
### Ejectment

67.    The United States incorporates by reference each of the preceding paragraphs above as though fully set forth herein.

**ANSWER:**    Defendant realleges and incorporates herein by reference each and every answer to each allegation contained in the foregoing paragraphs of this Answer.

68.    Since at least October 23, 2011, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Elsie Lake Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.

**ANSWER:**    Defendant denies.

69.    Since at least March 17, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's lands described in the East Ross Allen Lake Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.

**ANSWER:**    Defendant denies.

70.    Since at least April 28, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the First Annie Sunn Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.

**ANSWER:**    Defendant denies.

71.    Since at least July 28, 2014, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Center Sugarbush Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.

**ANSWER:**    Defendant denies.

72.    Since at least February 19, 2018, without authorization and legal right, the Town has willfully occupied and used the Band's and Allottees' lands described in the Second Annie Sunn Lane ROW and any appurtenances located thereon in the continuing operation of the Town's road system.

**ANSWER:**    Defendant denies.

73.    In the absence of valid grants of easement for right-of-way, the Town continues to unlawfully use and occupy the Band's and the Allottees' lands described in the Elsie Lake Lane ROW, the East Ross Allen Lake Lane ROW, the First Annie Sunn Lane ROW, the Center

Sugarbush Lane ROW, and the Second Annie Sunn Lane ROW. As a direct and proximate result of its unauthorized and continuing illegal occupation and use, the Town has prevented and continues to prevent the Band and the Allottees from enjoying and using their lands, which the United States owns in trust for the benefit of the Band and the Allottees.

**ANSWER:**   Defendant denies.

74.   The Town lacks any and all lawful right to use and occupy the Band's and Allottees' lands described in the Elsie Lake Lane ROW, the East Ross Allen Lake Lane ROW, the First Annie Sunn Lane ROW, the Center Sugarbush Lane ROW, and the Second Annie Sunn Lane ROW or otherwise to possess those lands in any way.

**ANSWER:**   Defendant denies.

75.   The Town has defied, and continues to defy, the authority of the United States, acting through the BIA, by failing to comply with the ROW Act.

**ANSWER:**   Defendant denies.

76.   The Town's occupation and use of the Band's and Allottees' lands is unlawful, and as a direct and proximate result of its trespass, the Town has damaged and continues to damage the Band and the Allottees and their land, and the governmental interests of the United States, and will continue to do so unless and until the parties reach a negotiated resolution that allows the Town's roads to remain in place pursuant to the ROW Act or, if the parties are unable to reach such a negotiated resolution, unless and until the Town's roads and any associated appurtenances located thereon are removed from the Band's and the Allottees' lands.

**ANSWER:**   Defendant denies.

## <u>AFFIRMATIVE DEFENSES</u>

Pursuant to Federal Rule of Civil Procedure 8(c), Defendant alleges that the following defenses may be applicable to the allegations contained in Plaintiff's Complaint:

1.      The Complaint fails to state a claim for relief.

2.      The Complaint is barred by the doctrine of *in pari delicto*.

3.      The statute of limitation bars this action.

4.      Plaintiff is equitably estopped from bringing this action.

5.      Plaintiff has unclean hands as it relates to the requested relief.

6.      Plaintiff contributed to or was the sole cause for the alleged claims.

7.      The doctrine of laches bars this action.

8.      The doctrine of waiver bars this action.

9.      Plaintiff may have failed to join certain third parties indispensable to this action.

10.     Any injuries or damages sustained by Plaintiff or the Band were proximately caused by third parties over whom Defendant neither controlled nor had the right to control.

11.     Defendant's maintenance and use of the Roads was open and obvious.

12.     Plaintiff and the Band implicitly and expressly consented to Defendant's use of the roads at issue.

13.     25 C.F.R. § 170.114(a) required, and still requires, the roads at issue to be open and available for public use.

14.     Both public and private necessity privileged Defendant to maintain and use the roads at issue.

15.     Defendant's maintenance and use of the roads is authorized by its plenary authority to exercise its police powers.

16.     To the extent the acts and regulations cited by Plaintiff preclude Defendant from fulfilling its statutory obligations, such acts and regulations are unconstitutional and in violation of the Tenth Amendment to the Constitution of the United States.

17.     By their own terms, certain ROWs did not contain expiration provisions, and others provided that they were subject to renewal upon compliance with applicable regulations.

18.     Discovery and investigation may reveal that additional defenses should be available to Defendant in this matter, and therefore Defendant accordingly reserve their right to assert separate and additional defenses.  Upon completion of discovery, if the facts warrant, Defendant may withdraw any of these defenses as may be appropriate, and further reserve the right to amend this answer and affirmative defenses and to assert additional defenses and other claims, as this case proceeds.

## COUNTERCLAIMS

1.     Defendant realleges and incorporates herein by reference each and every answer, admission, denial to each allegation, and affirmative defense contained in the foregoing paragraphs of this Answer.

2.     Plaintiff has taken the position that Defendant, by virtue of maintaining, utilizing, and providing critical services to its residents, has trespassed on the Band's land.

3.     Plaintiff has taken this position despite the fact that, notwithstanding the Roads wrongful removal from the National Tribal Transportation Facilities Inventory ("NTTFI"), the Band had listed Defendant as the owner of the Roads on the NTTFI.

4.     If the portions of the Roads at issue are closed to the public and Defendant, and if the Court determines as much, Defendant will be entirely precluded from providing critical

emergency services, such as fire protection and ambulance services to 65 property owners consisting of 53 homes and 12 vacant lots all within the Town's jurisdiction.

5.     Defendant is *obligated* to and does provide fire protection services and ambulance services for its residents pursuant to Wis. Stat. §§ 60.55 and 60.565.

6.     Moreover, Vilas County is obligated to provide law enforcement services to Defendant, and therefore, closure of the Roads will place Vilas County in violation of its obligation to provide law enforcement services.  *See* Wis. Stat. § 59.28(1) ("Sheriffs and their undersheriffs and deputies shall keep and preserve the peace in their respective counties.").

7.     Any determination by this Court that Defendant is not entitled to access the Roads at issue, or has trespassed on the Roads by virtue of providing such services, would place the Defendant and Vilas County in violation of its statutorily-mandated obligation to provide such services.

8.     As a result of Plaintiff and the Band's actions, two lawsuits have been filed against Defendant by affected property owners.  *See Robert H. Beer Jr., et al. v. Town of Lac du Flambeau, et al.*, Vilas County Case No. 2023CV000078; *Michael Hornbostel v. Town of Lac du Flambeau, et al.*, Vilas County Case No. 2023CV000068.

9.     The affected property owners alleged that, by virtue of the barricading of the Roads, Defendant has violated Wis. Stat. § 66.1035, which provides that "No town, village, city county, company, or corporation shall close up, use, or obstruct any part of the highway, street, or alley so as to materially interfere with its usefulness as a highway or so as to damage abutting property, or permit the same to be done, without just compensation being made for any resulting damage."

10.     The affected property owners also allege that, by virtue of the barricading of the Roads, Defendant has violated Wis. Stat. § 82.03(1)(a), which provides that a town board "shall have the care and supervision of all highways under the town's jurisdiction" and that it "shall be the duty of the town board to perform all of the duties that are prescribed by law for the superintendent of highways to perform, including keeping the highways passable at all times."

11.     The affected property owners' allegations stem directly from the actions taken by Plaintiff and the Band.

12.     Plaintiff and the Band have frustrated and caused the harm that Plaintiff alleges by delaying and refusing attempted renewals of the Roads' rights-of-way.

## FIRST COUNTERCLAIM

### Declaratory Judgment

13.     This matter presents an actual controversy within the Court's jurisdiction, pursuant to 28 U.S.C. §§ 2201 and 2202.

14.     Defendant contends:

a.      Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane (the "Roads") have been, and still are, open to the public pursuant to 25 C.F.R. § 170.114(a), by virtue of their inclusion on NTTFI;

b.      Defendant is, at a bare minimum, permitted to maintain the Roads, and utilize the Roads to provide critical infrastructure and emergency services;

c.      The Band has both expressly and impliedly consented to Defendant's use and maintenance of the Roads;

d.      Defendant's use and maintenance of the Roads was privileged by virtue of public and private necessity;

e. Defendant's use and maintenance of the Roads does not constitute a trespass or violation of the Indian Right-of-Way Act.

15. Plaintiff contends:

a. Defendant has willfully and wrongfully occupied and utilized the Roads without the authorization of the BIA and consent of the Band and Allottees pursuant to the Indian Right-of-Way Act;

b. By virtue of such use and occupation, Defendant is continually trespassing on the Roads and is in violation of the Indian Right-of-Way Act.

16. Defendant requests the Court to issue a declaration determining the respective rights and obligations of the parties, and specifically requests that the Court declare that Defendant is able to use and maintain the Roads and that Defendant's use and maintenance of the Roads does not constitute a trespass, does not violate the Indian Right-of-Way Act, and does not entitle Plaintiff to mesne profits, monetary damages, ejectment, costs, expenses, interest, or any other remedy.

## SECOND COUNTERCLAIM
### Implied Easement

17. Defendant realleges and incorporates herein by reference each and every answer, admission, and denial to each allegation contained in the foregoing paragraphs of this Answer, and each allegation contained within its Counterclaims.

18. To the extent the Court rules that the Roads are not now, or have not been, open to the public pursuant to 25 C.F.R. § 170.114(a), or that Defendant was not otherwise privileged to utilize and maintain the Roads, Defendant is entitled to an implied easement to utilize and maintain the Roads.

19. By virtue of the Band's revocation of Defendant's access to the Roads, a separation of title has occurred.

20. Prior to the Band's revocation of Defendant's access to the Roads, Defendant utilized and maintained the Roads for decades in an open and obvious manner, such that the use and maintenance of the Roads was plainly intended to be permanent.

21. The implied easement is necessary to the beneficial enjoyment of the land, as Defendant is responsible for maintaining the Roads and providing critical infrastructure and emergency services to those property owners whose access is reliant on the Roads.

22. Without access to the Roads, Defendant cannot provide such critical infrastructure and emergency services, which is the customary use of similar property utilized and maintained by municipalities.

23. Accordingly, Defendant is entitled to an implied easement over the Roads.

### THIRD COUNTERCLAIM
#### Easement by Necessity

24. Defendant realleges and incorporates herein by reference each and every answer, admission, and denial to each allegation contained in the foregoing paragraphs of this Answer, and each allegation contained within its Counterclaims.

25. To the extent the Court rules that the Roads are not now, or have not been, open to the public pursuant to 25 C.F.R. § 170.114(a), or that Defendant was not otherwise privileged to utilize and maintain the Roads, Defendant is entitled to an easement by necessity to utilize and maintain the Roads.

26. Defendant, as an owner of the Roads, has utilized, maintained, and provided critical infrastructure and emergency services.

27.     As a result of the actions by Plaintiff and the Band, which have restricted the Roads ability to be accessed by adjoining public roadways, Defendant no longer has the ability to utilize and maintain the Roads at issue, and as such, a severance has occurred.

28.     As a result of the actions by Plaintiff and the Band, a portion Roads are, in effect, landlocked.

29.     Without access to the Roads, Defendant cannot provide critical infrastructure and emergency services that it is statutorily-mandated to provide under Wisconsin law.

30.     Public policy dictates that Defendant be granted an easement of necessity to utilize and maintain the Roads so that it does not run afoul of its statutory mandate to provide critical infrastructure and emergency services.

**WHEREFORE**, Defendant Town of Lac Du Flambeau demands judgment as follows:

(a)     dismissing the Complaint on the merits, with prejudice;

(b)     granting judgment on the Counterclaims;

(c)     awarding statutory costs, disbursements, and attorney's fees; and

(d)     other relief as the Court deems just and equitable.

Dated: August 30, 2023.

VON BRIESEN & ROPER, S.C.

*s/ Frank W. Kowalkowski*

Frank W. Kowalkowski, SBN 1018119
VON BRIESEN & ROPER, S.C.
300 N. Broadway, Suite 2B
Green Bay, Wisconsin 54303
T: (920) 713-7800
F: (920) 232-4897
frank.kowalkowski@vonbriesen.com

Derek J. Waterstreet, SBN 1090730
VON BRIESEN & ROPER, S.C.
411 E. Wisconsin Avenue, Suite 1000
Milwaukee, Wisconsin 53202
T: (414) 287-1519
F: (414) 238-6434
derek.waterstreet@vonbriesen.com

*Attorneys for Defendant,*
*Town of Lac du Flambeau*

40076385_3.DOC