IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 3:23-CV-355

v.

TOWN OF LAC DU FLAMBEAU,

                Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF HOMEOWNERS'
MOTION TO INTERVENE**

The Homeowners, by and through their attorneys, Reinhart Boerner Van Deuren s.c., submit this memorandum of law in support of their Motion to Intervene. The Homeowners move for intervention as of right under Fed. R. Civ. P. 24(a)(2) and, in the alternative, permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Because the Homeowners satisfy all elements for intervention under both provisions, the Court should grant the Motion to Intervene.

**BACKGROUND**

The sole means of access to the Homeowners' property located in the Town of Lac du Flambeau, Wisconsin is via the four roads at issue in this case: Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, or Elsie Lake Lane (collectively, the "Roadways"). These Roadways were built on land that the United States of America (the "United States") asserts it holds in trust for the benefit of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"). The United States' complaint alleges that the rights of way for five segments of the Roadways (the "ROWs") held by the Town of Lac du Flambeau (the "Town") expired between 2011 and 2018 and the Town was required, but failed, to renew the ROWs. As a

result, the United States is seeking an order to eject the Town from continuing to use the Roadways and public town roads. *See* U.S. Compl., ECF No. 1, ¶¶ 1, 4, 76 & Second Claim for Relief. If the United States is successful, the Homeowners would lose access to their properties, many of which are their permanent residences.

Because the Town failed to renew the ROWs, the Homeowners filed individual applications for new rights of way over the four Roadways. In late 2022, right of way negotiations between the Homeowners and the Tribe came to an impasse, particularly upon the Tribe demanding $10,000,000.00 for limited term rights of way and then increasing its demand to $20,000,000. *See* Case No. 3:23-cv-00135 (the "Related Case"), ECF No. 12-11 at 1-2. In January 2023, members of the Tribe, including Tribal Council members, constructed barricades on the Roadways, which completely prevented the Homeowners from accessing their homes, causing irreparable harm to the Homeowners. *See* Case No. 3:23-cv-00135, ECF Nos. 13-17, 31-36 (eleven Homeowners' declarations). As a result, the Homeowners sued Tribal Council members, seeking relief that included removal of the barricades and an order allowing continued access to their homes. *See* Case No. 3:23-cv-00135, Amended Complaint, ECF No. 26. On August 15, 2023, the Court dismissed the Related Case without prejudice. *See* Case No. 3:23-cv-00135, ECF Nos. 64-65.

By this lawsuit, the United States seeks an order permanently closing the Roadways if the Town fails to meet the Tribe's outrageous demands. The United States only sued the Town. But the Homeowners have rights and must be heard on the significant issues in this case that have direct ramifications on their lives. If the United States prevails in this lawsuit, it will deprive the Homeowners of liberty and property without any due process. Intervention by the Homeowners

enables them to assert their property and liberty rights, as well as seek declaratory and injunctive relief related to the preservation of their rights.

The United States' complaint fails to address the Homeowners' legal and equitable redress and constitutional protections afforded to them by federal law and the U.S. Constitution. Specifically, the complaint does not address the acts that were committed on United States' land that are unlawful under provisions of the Federal-Aid Highway Act, the Tribal Transportation Program, and implementing regulations (the "TTP Provisions"). The failure to enforce the TTP Provisions has harmed and will continue to harm the Homeowners by taking away their property rights without any due process.

Further, the United States' complaint, which relies on the Indian Right-of-Way Act, 25 U.S.C. §§ 323-328 (the "ROW Act"), does not address the tribal members' unlawful barricading of the Roadways for approximately six weeks. Barricading the Roadways violates the TTP Provisions, which are part of a multifaceted federal statutory system, independent of the ROW Act. Further, the Tribe is allowed to continue with its temporary access permit regime, which also violates the TTP Provisions. The Department of the Interior is charged with implementing or enforcing the TTP Provisions set forth in 25 C.F.R. Part 170, which require the Roadways to be available for public use.[1] Yet, the Tribe is allowed to continue to require the Town to pay an escalating amount of more than $20,000 per month to keep the Roadways open.

As the trustee of these lands, the United States has the obligation to ensure that the beneficiaries do not deny the Homeowners access to their properties, and that the United States' failure to act constitutes a violation of their Fifth Amendment rights. Moreover, the federal

---

[1] The Roadways are public roads because they remain listed on the Tribe's National Tribal Transportation Facility Inventory ("NTTFI"): "All Tribal transportation facilities listed in the approved NTTFI must be open and available for public use as required by 23 U.S.C. 101(a)(3[3])." 25 C.F.R. § 170.114(a).

regulatory scheme through which the Homeowners have applied for new rights of way (after the Town failed to do so) is unconstitutional under the Fifth Amendment as-applied, because it authorizes the Tribe to demand an apparently unfettered arbitrarily high monetary payment in exchange for a limited term of access over public roads maintained by the Town. The result is the Homeowners' inability to afford new rights of way over the Roadways and loss of access to their properties.

The United States' complaint supports the Tribe's quest to permanently close the Roadways, which will cause irreparable harm to the Homeowners. Thus, the Homeowners hereby move to intervene in this action and file their Answer and Counterclaims in Intervention, as attached to their Motion.

## ARGUMENT

i. **The Homeowners are entitled to intervention as of right because they claim an interest relating to the property that is the subject of the action, and they are so situated that disposing of the action will impair or impede their ability to protect their interests, and the Town does not adequately represent their interests.**

"To intervene [as of right] in a federal lawsuit under Federal Rule of Civil Procedure 24(a)(2), a proposed intervenor needs to meet four elements: (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Planned Parenthood of Wisc., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). The Homeowners meet their burden of establishing all four elements. Furthermore, "[a] motion to intervene as a matter of right . . . should not be dismissed unless it appears to a certainty that the [putative] intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.*; *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019).

**1. The Homeowners have timely moved to intervene.**

Courts in the Seventh Circuit must "look to four factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019).

Here, the Homeowners have timely moved to intervene. The Homeowners filed the pending motion in the early stages of this litigation promptly after Town answered the complaint. *Cf. Feed.ing B.V. v. Principle Sols., LLC*, No. 14-cv-1241, 2015 WL 136402, at *2 (E.D. Wis. Jan. 8, 2015) ("By filing its motion within two weeks of the initiation of this action, the [proposed intervenor] will not 'upset the progress made towards resolving [the] dispute' because this lawsuit is in its early stages." (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013))).

The Homeowners first knew of their interest in the case upon receiving notice of the filing of the United States' complaint on May 31, 2023 and acted upon such knowledge promptly after the Court encouraged the Homeowners to intervene at the June 7 hearing in the Related Case. As this intervention is sought around the same time as the Town's filing of a responsive pleading, there is no delay in the Homeowners' motion and thus there is no prejudice to either the United States or the Town.

On the other hand, there would be tremendous prejudice to the Homeowners if their motion is denied. The Homeowners would lose the ability to assert their rights to continue to use the Roadways in an action in which the other interested parties are involved (or, in the case of the Tribe, can be involved if they so choose). Denial of the motion would also deprive the

Homeowners the opportunity to protect their unique property and constitutional interests and the ability to safeguard their personal livelihoods as they relate to the sole roads by which they access their homes.

**2. The Homeowners have an interest relating to the subject matter of the action.**

"A proposed intervenor must demonstrate a direct, significant and legally protectable interest in the property at issue in the lawsuit. The interest must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit. The interest must be so direct that the applicant would have a right to maintain a claim for the relief sought." *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (internal citation and quotation marks omitted).

The Homeowners have interests relating to the lands that are the subject of this suit (i.e., the right to use the Roadways to access their own homes) that are direct, significant, and legally protectable. Fed. R. Civ. P. 24(a)(2); *Keith v. Daley*, 764 F.2d at 1268. The Homeowners' interests in the Roadways are undoubtedly "direct" and "significant," as their livelihoods depend on the Roadways remaining open to the public and unbarricaded, and their liberty and freedom are directly connected to the Roadways. *See Kaul*, 942 F.3d at 797 (assuming the existence of an interest that might be impaired and defining that interest in order to assess whether the interest is adequately represented by existing party). The Homeowners are the primary people using the four Roadways for access to their properties, and therefore, must be allowed to assert their rights with respect to the Roadways.

The Homeowners also have a legally protectable interest in the nature of the Roadways and ensuring they remain "public" consistent with how they have been treated for many decades. *See United States v. Reserve Mining Co.*, 56 F.R.D. 408, 419 (D. Minn. 1972) (finding that members of confederation of environmental groups have economic and property interests

relating to Lake Superior and some members receive their drinking water from Lake Superior, and noting all members seek to represent the public's interest in Lake Superior as a resource).

Moreover, the Homeowners have an interest in protecting their Fifth Amendment rights, and they have property interests relating to the continued use of the Roadways at issue in this case. *See Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004) (a constitutional interest is a legally protectable interest for Rule 24 purposes); *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015) ("Although property interests are almost always adequate, they are not the only types of interests that can support intervention under Rule 24(a)(2)."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) (property interest entitled to protection under the Taking Clause of the Fifth Amendment). Specifically, the closure of the Roadways caused complete deprivation of the Homeowners' liberty and property interests in their homes, without any due process. Yet, the United States seeks an order allowing the Roadways to be barricaded in the future if the Tribe's outrageous demands are not met. The Homeowners' constitutional rights with respect to their homes and the Roadways at issue in this suit, along with the significant loss and irreparable harm that the Homeowners continue to face considering the Tribe's continued threats to the close the roads, constitute interests that are "sufficiently 'direct and substantial' to justify intervention under Rule 24(a)(2)." *See Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 440 (N.D. Ill. 1996). Such constitutional rights and interests do not belong to an existing party in this suit, i.e., the Town. *Keith*, 764 F.2d at 1268.

Although the Seventh Circuit does not require a property right to satisfy the "interest" element of Rule 24(a)(2), the Homeowners nonetheless have a property right in their homes that are serviced solely by the respective Roadways. The Homeowners further have a property

interest in the Roadways given their federally public nature, the fact that the Roadways lie upon land held in trust by the United States, and the need for the Roadways to remain open and available to the public for free and reasonable access to and from the Homeowners' homes. Therefore, the Homeowners demonstrate that they have an interest of the kind sufficient to meet the "interest" prong of Rule 24(a)(2). *See Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 385 (N.D. Ill. 2006) (The requisite interest "is something more than a mere 'betting' interest . . . but less than a property right." (quoting *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir. 1995))).

### 3. The Homeowners' interests would be impaired by disposition of this action.

"Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). Notably, the standard is "potential impairment," which "is measured by the general standards of stare decisis" *Id.*; *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

If the United States prevails on its trespass and ejectment action against the Town, the Homeowners' ability to protect their interests in not only maintaining the publicly passable nature of the Roadways, but also their constitutional rights and property interests that will undoubtedly be further harmed by such disposition would, as a practical matter of stare decisis, be impaired or impeded. *See Pueblo of Jemez v. United States*, No. 1:12-cv-0800 RB/WPL, 2016 WL 8136015, at *2 (D.N.M Sept. 20, 2016) (finding that proposed intervenor's property interests may be affected by the outcome of the action and therefore the proposed intervenor's ability to protect its interests could be impaired by a disposition in the plaintiff's favor without participation of the proposed intervenor); *Meridian Homes Corp.*, 683 F.2d at 204 (7th Cir. 1982); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967) ("[T]he failure to

8

allow Atlantis an opportunity to advance its own theories both of law and fact in the trial (and appeal) of the pending case will if the disposition is favorable to the Government as a practical matter impair or impede (its) ability to protect (its) interest.").

As discussed above, without intervention, the Homeowners could be faced with a federal court opinion deciding issues that go to the heart of the Homeowners' interests without the Homeowners having had an opportunity to advance their own theories of law and fact in the case that produced such an opinion. *Cf. Reserve Mining Co.*, 56 F.R.D. at 417 ("[T]he possibility of a binding judgment by this Court as well as the possibility of inconsistent or excessive litigation should, as a practical matter, be considered in determining whether intervention should be allowed. Because there would be the possibility of such inconsistent litigation, even presuming the availability of an alternative forum for [the proposed intervenor], the . . . criterion for intervention has been met."). This potential impairment is sufficient to satisfy the third element.

**4. The Homeowners lack adequate representation of their interests by the Town.**

The Seventh Circuit uses a three-tiered methodology for evaluating adequacy of representation under Rule 24(a)(2). *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020). The default rule is liberal: "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Kaul*, 942 F.3d at 799 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The burden of making this showing is minimal. *Huebsch*, 969 F.3d at 747. "However, if the interest of the absentee is identical to that of an existing party, or if a governmental party is charged by law with representing the absentee's interest, then the standard for measuring adequacy of representation changes. . . . [W]here the absentee and an existing party have identical interests, or the existing party is a governmental agency or official with a legal duty to represent the

9

absentee's interest[,] a rebuttable presumption of adequate representation arises, and the prospective intervenor must carry a heightened burden to establish inadequacy of representation. The degree of this heightened burden varies." *Id.* "Where the prospective intervenor and the named party have the same goal, . . . there is a rebuttable presumption of adequate representation that requires a showing of some conflict to warrant intervention." *Kaul*, 942 F.3d at 799.

Here, the Town and Homeowners do not have identical claims and interests, nor do they have "the same goal." The Town is a municipality that cannot assert the Homeowners' constitutional rights in response to this suit. The Homeowners seek to rely on their Fifth Amendment rights to ensure the government prevents or adequately responds to the Tribe's continued threat to close the Roadways in the future. *See Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, No. 08-cv-00462-REB-MEH, 2008 WL 6490406, at *4 (D. Colo. May 1, 2008) (finding intervenor "not represented adequately" because intervenor's "primary interest in intervening . . . is alleging claims . . . that are not alleged by the Plaintiffs"). Undoubtedly, the Town's main goal will be to fully absolve itself of liability for the alleged trespass damages related to the past, present and future use of the Roadways, whereas the Homeowners' goal is to safeguard their constitutional rights and ensure that the government is required to take all action necessary to protect their property and liberty interests and avoid further irreparable harm and deprivation of the Homeowners' livelihoods and freedom.

Moreover, past precedent confirms that the Town's representation of the Homeowners' interests would likely be inadequate. The Town's letter in 2014 that effectively communicated to the residents of East Ross Allen Lake Lane and Center Sugarbush Lane that the Town would apply for ROWs and requested that the Homeowners take no action, and then the Town failing to apply for ROWs for the Roadways, demonstrates the Town's representation at the very least

"may be" inadequate. *See* Related Case, ECF No. 61-1.[2] A party that promised Homeowners that it would remedy the road issues, but failed to do so for nearly a decade, cannot be relied upon to adequately represent the Homeowners' interests. Accordingly, the Homeowners are entitled to intervene of right in this case.

      **ii.**      **Alternatively, the Homeowners are entitled to permissive intervention because they have a claim that shares a common question of law or fact with the main action.**

Under Federal Rule of Civil Procedure 24(b)(1) a district court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is "wholly discretionary." *Kaul*, 942 F.3d at 803. The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), "but otherwise does not cabin the court's discretion." *Kaul*, 942 F.3d at 803. "Rule 24(b)(1) is vague about the factors relevant to permissive intervention, but it is not just a repeat of Rule 24(a)(2). [The Seventh Circuit] ha[s] thus cautioned courts not to deny permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right." *Id.*

In addition to showing intervention of right, permissive intervention is alternatively appropriate for the Homeowners. First, the Homeowners have intervened in a timely fashion such that there is no delay or prejudice—let alone undue delay or prejudice to the existing parties' rights.

---

[2] The Town's 2014 letter to residents of East Ross Allen Lake Lane and Center Sugarbush Lane stated: "[T]he [BIA] letter [to residents] advised that if you wish to continue to use the Town Road, you would have to complete an application form and return it to the BIA Office for processing and for obtaining an easement from the Tribe. At this time, the Town requests that each of you <u>not</u> engage in further communication with the BIA. The Town Board intends to protect the road as a Town Road. In order to effectively communicate with the Bureau of Indian Affairs on this matter, it is important that all communications come through the Town Board and its attorney. . . ." Related Case, ECF No. 61-1 (emphasis in original).

11

Second, as outlined above, the Homeowners' claims or defenses share plenty of common questions of law and fact with the main action. By filing this lawsuit, the United States subjected the lands containing the Roadways to the jurisdiction of this Court. Every single cause of action that the Homeowners intend to bring against the United States pertains to the Roadways issues brought before this Court. Additionally, the United States brought an ejection claim, seeking an order allowing the Tribe to close roads that provide the singular means of free and reasonable access to dozens of Homeowners' homes and are "listed" on the NTTFI which creates a public right for the Homeowners to use the roads unimpeded. *See* 25 C.F.R. § 170.114(a); 25 C.F.R. §§ 2.6, 2.7, 2.9; 5 U.S.C. § 706(2). Such a conclusion would have a much greater impact on the individual Homeowners than the Town as an entity.

Third, the Homeowners assert claims which are different from or broader than the defenses asserted (or that will be asserted) by the Town or the claims asserted by the United States against the Town but which arise from the same set of factual circumstances. The Court acknowledged during the June 7, 2023 hearing in the Related Case that the Homeowner's claims regarding the Roadways would be more appropriately brought in this case, to which the United States agreed on the record. Thus, the Homeowners should, in the alternative to intervention of right, be permitted to intervene.

## CONCLUSION

For the foregoing reasons, the Homeowners respectfully request that the Court grant their motion to intervene and allow the Homeowners to file their proposed Answer and Counterclaims in Intervention.

Respectfully submitted this 15th day of September, 2023.

| | |
|---|---|
| REINHART BOERNER VAN DEUREN S.C.<br>N16 W23250 Stone Ridge Drive<br>Suite 1<br>Waukesha, WI 53188<br><br>P.O. Box 2265<br>Waukesha, WI 53187-2265<br><br>Telephone: 262-951-4527<br>Facsimile: 262-951-4690 | */s/ David G. Peterson*<br>David G. Peterson<br>WI State Bar ID No. 1001047<br>dgpeterson@reinhartlaw.com<br>Bridget M. Hubing<br>WI State Bar ID No. 1029356<br>bhubing@reinhartlaw.com<br>Olivia J. Schwartz<br>WI State Bar ID No. 1115787<br>oschwartz@reinhartlaw.com<br>Samuel C. Sylvan<br>WI State Bar ID No. 1131339<br>ssylvan@reinhartlaw.com<br><br>*Attorneys for Proposed Intervenors* |

50114845v2