IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff and
Counter Defendant,                    Case No. 3:23-CV-355-wmc

v.

TOWN OF LAC DU FLAMBEAU,
et al.,

Defendants and
Counter Claimants.

## MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES' MOTION TO QUASH THE STEIGERWALDT SUBPOENA AND FOR A PROTECTIVE ORDER

The Intervenor Defendant Homeowners (the "Homeowners"),[1] by and through their attorneys, Reinhart Boerner Van Deuren s.c., submit this memorandum of law in opposition to the Motion to Quash (ECF No. 31) (the "Motion") filed by the United States of America ("USA" or "government"). For the reasons stated below, the Homeowners respectfully request that the Court deny the USA's Motion.

## FACTUAL BACKGROUND

### A. The Right-of-Way Applications and Related Appraisals.

The Homeowners detailed the long history of the Right-of-Way ("ROW") applications relevant to this matter in their Answer and Counterclaim (ECF No. 29 ¶¶ 171-200) and incorporate those allegations by reference herein. But for the Court's convenience, the

---

[1] ECF No. 29-1 contains the list of Homeowners who are the Intervenor Defendants.

Homeowners summarize herein the relevant sequence of events—a sequence of which the USA does not paint an accurate picture in its Memorandum of Law in support of its Motion (ECF No. 32) ("Gov't Br.").

       As part of the ROW application process, the Homeowners, most of whom were among the pool of applicants for the ROWs at issue, were informed that they needed to obtain appraisals of the land on which sit the relevant portions of Center Sugarbush Lane, East Ross Allen Lake Lane, Elsie Lake Lane, and Annie Sunn Lane (collectively the "Roadways" or "Roads"). (ECF No. 29 ¶ 188.)[2] In May 2022, the Department of the Interior ("DOI"), Appraisal and Valuation Services Office ("AVSO") issued a ROW Statement of Work ("SOW") for these appraisals, and Steigerwaldt Land Services, Inc. ("Steigerwaldt") was ultimately engaged to complete them. (ECF No. 32-3; ECF No. 32-1 at 10-12.) The applicants paid for these appraisals and, although AVSO is listed as the client in the SOW and in the DOI's May 20, 2022 Real Estate Appraisal Letter of Engagement ("LOE"), the SOW lists the "Intended Users" as the Bureau of Indian Affairs ("BIA"), the Tribe,[3] AVSO, and the "affected landowners." (ECF No. 32-3 at 2.) Similarly, the LOE states that "[t]he intended users of the appraisal report are . . . the affected landowners." (ECF No. 32-1 at 11.) The various portions of the four Roads at issue in this case have been surveyed by Steigerwaldt Land Surveying, LLC, and they are all very short, comprising barely one mile in length *all combined*. (ECF No. 29 ¶¶ 73-76.)

---

[2] In its Memorandum of Law in support of the Motion to Quash, the USA suggests for the first time that the ROW application packages are "incomplete for lack of items required by BIA ROW regulations." (Gov't Br. at 4.) However, neither the DOI, BIA nor any other governmental agency ever informed the applicants that the ROW applications were "incomplete" or deficient in any manner other than having to complete the appraisals, which now are complete and are included in the subjects of the Subpoena. (Hubing Decl. ¶ 3.) In fact, by issuing the SOW for the appraisals, the AVSO confirmed that the applications were otherwise complete.

[3] The "Tribe" refers to the Lac du Flambeau Band of Lake Superior Chippewa Indians.

Prior to the completion of those appraisals, on October 26, 2022, the Tribe demanded $10 million for alleged "past trespass" and to issue 50-year ROWs for the Roadways. (*Id.* ¶ 192.) The Tribe said the $10 million "demand amount" was valid until October 31, 2022. (*Id.*) The Homeowners advised that they needed to review the appraisals before responding to the Tribe's demand, but their request was rebuffed, and less than three months later, the Tribe doubled its demand to $20 million. (*Id.* ¶¶ 193-94.) The Tribe has refused to consent to the BIA delivering copies of the appraisals to the Homeowners even though the Homeowners, as "affected landowners" who paid for the appraisals, are the intended users of them. (*Id.* ¶ 195; ECF No. 32-1 at 11.)

## B. The Steigerwaldt Subpoena.

On October 25, 2023, counsel for the Homeowners sent a Rule 45 Subpoena *Duces Tecum* (the "Subpoena") to Steigerwaldt via e-mail and asked Lee Ann Steigerwaldt ("Ms. Steigerwaldt"), Steigerwaldt's CEO & President, to accept service of the Subpoena. (Peterson Decl. ¶ 3, Ex. A at 1-3; *see also* ECF No. 32-1.) The Subpoena demanded that Steigerwaldt produce seven categories of documents, all relating to the appraisals that Steigerwaldt conducted for portions of the Roadways pursuant to the LOE. (Peterson Decl. ¶ 3, Ex. A at 10-11; ECF No. 32-1 at 4-5.) Before sending the Subpoena to Steigerwaldt, the Homeowners had sent a copy of the Subpoena to counsel for both the USA and the Town of Lac du Flambeau (the "Town"), advising that the Subpoena would be served on Steigerwaldt and asking counsel to advise if they had any questions or comments regarding the Subpoena. (Peterson Decl. ¶ 4, Ex. B.) Steigerwaldt accepted service of the Subpoena on October 31, 2023. (Peterson Decl. ¶ 5, Ex. C.) The Subpoena response deadline was November 17, 2023. (Peterson Decl. ¶ 3, Ex. A at 7; ECF No. 32-1 at 1.)

On October 31, 2023, the USA vaguely suggested that the Subpoena sought "privileged" materials without asserting, articulating, or explaining what "privilege" the USA was referring to. (Peterson Decl. ¶ 6, Ex. D at 2-3.) Despite recognizing that the Preliminary Pretrial Conference Order (the "Pretrial Order") (ECF No. 24) requires good-faith attempts to resolve discovery disputes before seeking court intervention, the USA stated that they did not see "how [the parties] might meet halfway on this" and that it would "move to quash if [the Homeowners] [we]ren't willing to withdraw the Subpoena," but that the USA would discuss further if the Homeowners thought "such a conversation would be constructive." (Peterson Decl. ¶ 6, Ex. D at 2-3.)

The Homeowners promptly sought an explanation from the USA on its assertion of "privilege," and stated that it would be appropriate to schedule a conference call to discuss, because a "mere exchange of e-mails [does not] suffice[] for the meet and confer obligation" under the Pretrial Order, and requested that in order for the parties to have a productive meet and confer, the USA provide clarification prior to the meet and confer as to "what 'privilege'" the USA was referring. (Peterson Decl. ¶ 7, Ex. D at 2.) Two days later, on November 3, 2023, the USA responded by e-mail stating that USA's counsel was "conferring with [their] clients" and hoped to provide a more "fulsome response" to the Homeowner's request for explanation about what "privilege" the USA was referring to by the following week. (Peterson Decl. ¶ 8, Ex. E at 1.)

On November 16, 2023, the day before the Subpoena response deadline, Ms. Steigerwaldt stated that Steigerwaldt had the subpoenaed information packaged up and ready to send, but requested a few more days to review the Uniform Standards of Professional Appraisal Practice ("USPAP") ethics rule before complying. (Hubing Decl. ¶ 4; Peterson Decl. ¶ 9;

Peterson Decl. ¶ 9, Ex. F at 1.) Ms. Steigerwaldt revealed that the USA or the Tribe effectively had pressured her to not comply with the Subpoena, stating that the USA or the Tribe had contacted her and "made their position known." (Hubing Decl. ¶ 5; Peterson Decl. ¶ 9; Peterson Decl. ¶ 9, Ex. F at 1.) The Homeowners agreed to provide Steigerwaldt with an extension until November 21, 2023, but also explained that the USPAP ethics rule did not obviate Steigerwaldt's need to comply with the Subpoena. (Peterson Decl. ¶ 9, Ex. F at 1.) The Homeowners did not communicate to either the USA or the Town that it had agreed to provide Steigerwaldt with an extension. (Hubing Decl. ¶ 6; Peterson Decl. ¶ 10.)

The USA never provided explanation of the asserted "privilege." (Peterson Decl. ¶ 11.) In fact, the USA did not reach out to the Homeowners again until November 20, 2023, several days after the Subpoena's November 17, 2023 compliance date had lapsed, 19 days after counsel for the Homeowners requested explanation of the USA's assertion of "privilege," and nearly a month after the Homeowners originally provided a courtesy copy of the Subpoena to the United States. (Peterson Decl. ¶ 11, Ex. D at 1.) And on November 20, the USA *still* did not provide the requested explanation, but instead asked the Homeowners to further extend the deadline for the Subpoena, promising the Homeowners that the long-awaited clarification of what "privilege" the USA was alluding to would be provided by November 21, 2023 (the extended Subpoena compliance deadline provided to Steigerwaldt). (*Id.*) Given the USA's failure to provide any explanation for its position, and the impracticability of conferring internally on the USA's belated request, counsel for the Homeowners declined to extend the Subpoena compliance date. (*Id.*) The USA never provided its written clarification, and never conferred telephonically with counsel for the Homeowners before the USA filed the present Motion to Quash. (Peterson Decl. ¶ 12.)

## ARGUMENT

The USA's Motion seeks to prevent the production of materials that are directly relevant to the claims and defenses in this case. All of the USA's arguments seeking to quash the Subpoena fail as explained below.

The USA's Motion largely hinges on FOIA exemptions and FOIA cases, all of which are inapplicable here. This is not a FOIA case; it has nothing to do with FOIA. As explained below, numerous federal courts have held that FOIA exemptions are not "privileges" outside of FOIA cases. The USA also confuses and conflates potential concerns of "confidentiality" with privilege and urges the Court to quash the Subpoena based on that erroneous premise.

Further, the USA's argument that service of the Subpoena was premature or untimely is wrong. At no time before or after the Subpoena was served did the USA raise any putative need for a Rule 26(f) conference before the Homeowners could engage in discovery. (Hubing Decl. ¶ 8; Peterson Decl. ¶¶ 13-14.) Such an assertion is specious. The Homeowners participated in the October 4, 2023 preliminary pretrial conference with the Court, and afterwards expressly conferred with counsel for all parties regarding the subjects of the Rule 26(f) conference and the agreed form and content of the Parties' Rule 26(a) Initial Disclosures. (Hubing Decl. ¶ 7; Peterson Decl. ¶ 14, Ex. G.) At no point has the USA ever stated, prior to filing its Motion, that the USA needed to have a Rule 26(f) conference with the Homeowners. (Hubing Decl. ¶ 8; Peterson Decl. ¶¶ 13-14.) This case has been pending for six months. The USA's argument that the Subpoena is seeking "expedited" discovery is incorrect.

Last, ironically, the Motion itself is improper because the USA did not attempt to settle the dispute in good faith as required by the Pretrial Order before filing it. Further the Motion appears to be untimely. The date of compliance on the Subpoena was November 17, 2023. The

Homeowners agreed to give Steigerwaldt until November 21, 2023, to produce the subpoenaed materials, only to allow Steigerwaldt more time to confirm subpoena compliance did not run afoul of USPAP ethics provisions (which it does not). But the Homeowners did not consent to giving the USA time after the Subpoena compliance deadline to challenge the Subpoena. The USA's Motion was filed after the Subpoena compliance deadline, and thus is untimely under Rule 45(d)(3)(A).

For these reasons, the Court should deny the Motion.

## I. The Subpoena is Timely.

The USA incorrectly argues that the Subpoena is untimely under Rule 26 because the Homeowners did not participate in the preliminary pretrial conference on October 4, 2023 as a party and have not otherwise conferred with the USA and Town regarding discovery. (Gov't Br. at 15-16.) The Homeowners did attend the Court's October 4, 2023 preliminary pretrial conference, at which time the Motion to Intervene was pending. (Hubing Decl. ¶ 7.) After the Motion to Intervene was granted, the Homeowners expressly conferred with the USA and the Town regarding the subjects of the Rule 26(f) conference and the parties' Rule 26(a) Initial Disclosures. (Peterson Decl. ¶¶ 13-14, Ex. G.) Further, the USA's assertion—that the parties need to hold another Rule 26(f) conference because the Homeowners' Motion to Intervene was not granted until October 16, 2023, and that the Homeowners cannot issue any discovery until after such a conference—is untethered to the plain language of the Rule and unsupported by any other legal authority. This argument is nothing more than an attempt to put form before substance, because even if it were a valid argument, the parties undoubtedly would be right back here in a few weeks after the Subpoena is re-served after completion of such a conference.

The reality is that the Rule 26(f) conference has already occurred, and the parties are therefore free to engage in discovery. *See* Fed. R. Civ. P. 26(d)(1). There is no indication in the Rule—nor does the USA cite any legal authority so holding—that another Rule 26(f) conference must take place now that the Homeowners' Motion to Intervene has been granted. And in fact, the Rule itself indicates that no additional Rule 26(f) conference will occur. For example, subsection (a)(1)(D), which relates to the time for parties served or joined later to make their initial disclosures, states that "[a] party that is first served or otherwise joined after *the* Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined . . . ." Fed. R. Civ. P. 26(a)(1)(D) (emphasis added). Use of the phrase "*the* Rule 26(f)" conference indicates that one and only one such conference occurs.[4] Here, that Rule 26(f) conference took place prior to the Court's October 4, 2023 preliminary pretrial conference, and the Subpoena was served several weeks later. Thus, the Subpoena is timely under Rule 26.

The USA focuses largely on the argument that the Subpoena is untimely because the USA has not yet had a chance to respond to—and potentially seek to narrow—the Homeowners' counterclaims. (Gov't Br. at 16-17.) The USA ignores that the subpoenaed information is not only relevant to the Homeowners' counterclaims, but that it is, in fact, relevant to the USA's own claims and defenses thereto. In trying to understand the USA's initial assertion of "privilege," the Homeowners responded that the USA seemed to be conflating privilege with relevance, and asked the USA to further explain how the subpoenaed information was not relevant. (Peterson Decl. ¶ 7, Ex. D at 2.) The Homeowners laid out their position on the issue:

---

[4] *See also Rigsby v. Miscik,* No. 14-CV-23-BBC, 2014 WL 4678271, at *4 (W.D. Wis. Sept. 18, 2014) (finding unpersuasive defendants' arguments that they were not required to produce certain documents because they were not parties to the case when the preliminary pretrial conference was held and stating, "It makes little sense to hold new conferences every time a new party enters the case unless that party needs to modify the preliminary pretrial conference order.").

> The appraisals are directly relevant because the stated purpose set forth in the contract was to determine the 'market value appraisal for right-of way on the subject properties,' which is nothing more than the value of the use of the roads over time. This goes to the very heart of the United States' claim for trespass damages because use (or alleged misuse) of the roads and value thereof is the essence of the United States' suit.

(*Id.*) The USA effectively concedes this point by failing to address it in subsequent communications and in their Memorandum of Law in support of the Motion.

Last, the USA argues that the Homeowners' issuance of the Subpoena at this juncture in the litigation "could and would waste the time of the parties, Steigerwaldt, . . . and the Court." (Gov't Br. at 17.) Steigerwaldt has confirmed that it has already gathered the subpoenaed materials and would be ready to disclose them but for a review of the USPAP ethics rule (which provides that subpoena compliance is permissible) and, now, the USA's Motion. (Peterson Decl. ¶ 9, Ex. F; Hubing Decl. ¶ 4.) The only party wasting time is the USA, who failed for weeks to try to resolve this discovery dispute, never provided any explanation for its position, failed to participate in a meet and confer, and then filed a motion to quash after the Subpoena compliance deadline.

## II.  The USA's Motion is Improper and Untimely.

Unlike the Subpoena, the Motion is improper and untimely, both because the USA failed to meet and confer with the Homeowners in good faith prior to filing the Motion, and because the Motion was filed after the date of compliance for the Subpoena.

First, the Motion is improper because the USA failed to make a good faith attempt to resolve the dispute with the Homeowners prior to filing it despite having more than ample time. (Peterson Decl. ¶¶ 4-8, 11-12, Ex. D.) The Pretrial Order states: "A party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute." (ECF

No. 24 at 4.) "Good faith" means more than just an e-mail stating that if a subpoena is not withdrawn a motion to quash will be filed.[5] Further, the Pretrial Report requires the party filing a subsequent discovery motion to set forth in that motion "[a]ll efforts to resolve the dispute." (*Id.*)[6] In their Motion, the USA makes a scant effort to establish that they have met this requirement, stating that the USA contacted the Homeowners on November 20 to request an extension of the Subpoena compliance deadline "to allow sufficient time for the United States to provide its clarification and for the parties to confer." (ECF No. 31 at 2.) The United States indicated that the Homeowners declined to extend the deadline and that "efforts to resolve the dispute are incomplete . . . ." (*Id.*)

What is truly incomplete is the picture the USA paints of its attempt to resolve this dispute. Whatever view of the "good faith" standard the Court takes, the USA's efforts here cannot possibly pass muster. The USA in fact made no attempt to resolve the dispute—it merely created a dispute by vaguely and generally asserting some "privilege" over the subpoenaed materials and left it up to the Homeowners (and the Town) to try to understand the basis of its

---

[5] As stated in *Schmidt v. Audrain Cnty. Crisis Intervention Servs. Inc.*, No. 2:18-CV-00057-NCC, 2019 WL 13273838, at *1 (E.D. Mo. Aug. 2, 2019):

> 'Good faith' requires 'a genuine attempt to resolve the discovery dispute through nonjudicial means, and 'conferment' requires the parties to have had an actual meeting or conference.' *Williams v. Cent. Transp. Int'l, Inc.*, No. 4:13-CV-2009 CEJ, 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014). *See, e.g. Black Hills Molding, Inc. v. Brandom Holdings, LLC*, 295 F.R.D. 403, 409 (D.S.D. 2013) (noting 'good faith' effort by defense counsel included no less than seven contacts by telephone, email, letter and in-person conversations). The requirement to confer in good faith is critical to the litigation process. This requirement helps to narrow the issues presented to the Court and to eliminate unnecessary motion practice. It is not an empty formality. *See Williams* 2014 WL 6463306, at *2. In this case, defense counsel did not complete the required good faith attempt to confer with Plaintiff's counsel in person or by telephone. *See Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (citing *Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003) to note the difference between 'an attempt to confer' and a 'good faith attempt to confer.').

[6] The Pretrial Order cautions that failure to abide by these requirements "could result in cost shifting and sanctions under Rule 37." (ECF No. 24 at 4.)

assertion. In fact, in its initial e-mail, the USA indicated its unwillingness to resolve the dispute without court intervention: it gave the Homeowners only a take-it-or-leave-it option to either completely withdraw the Subpoena or face a motion to quash. (Peterson Decl. ¶ 6, Ex. D at 2-3.) The Homeowners asked for clarification on the USA's position and emphasized that a call to discuss the parties' dispute would be both necessary and prudent. (Peterson Decl. ¶ 7, Ex. D at 2.) The USA had weeks during which it could have arranged for a call amongst the parties or otherwise explained or articulated its assertion of "privilege." It did neither. Rather, on November 20, 2023, several days after the compliance date noted on the Subpoena, the USA asked for an extension, to which the Homeowners were not in a position to agree. (Peterson Decl. ¶ 11, Ex. D at 1.) The USA then filed its Motion the very next day, begging the question why it previously failed to provide any explanation of its position or comply with its meet and confer obligations if it had the brief ready to go.

The USA asserts that the requirements of Rule 26(f) are not "merely technical." (Gov't Br. at 16.) Yet it ignores that the requirements of the Pretrial Order are also not "merely technical." Obligations to make "a good faith attempt to resolve" discovery disputes like those set forth in the Pretrial Order here save parties the time and expense of litigating unnecessary discovery motions, and can narrow and/or focus the issues that need to be addressed, and subsequently conserve precious judicial resources. *See Schmidt*, 2019 WL 13273838, at *1. The fact that USA's *own delay* is the sole reason the parties did not confer prior to the Subpoena compliance deadline belies the purported urgency of the Motion and the supposed importance of withholding the subpoenaed materials.

Even if the few e-mail communications remitted by the USA constituted a good faith attempt to resolve this dispute (they do not), conspicuously absent from those e-mails is anything

relating to the timeliness of the Subpoena. (Peterson Decl. Exs. D, E; *see also* Peterson Decl. ¶¶ 12-13; *see also* Hubing Decl. ¶ 8.) As it relates to that specific argument, the USA made absolutely no attempt to resolve the dispute, let alone a "good faith" one.

Further, the Motion is not timely under Rule 45(d)(3)(A). The Subpoena's compliance deadline on its face is November 17, 2023. (Peterson Decl. ¶ 3, Ex. A at 7; ECF No. 32-1 at 1.) While the Homeowners agreed to give Steigerwaldt until November 21, 2023, to produce the subpoenaed materials in order to give Steigerwaldt more time to confirm subpoena compliance did not run afoul of USPAP ethics provisions (which it does not), the Homeowners did not agree to give the USA time after November 17, 2023 (the time of compliance per the Subpoena) to challenge the Subpoena. (Peterson Decl. ¶¶ 9-10, Ex. F; Hubing Decl. ¶ 6.) The USA had plenty of time to challenge the Subpoena. It had clearly decided by October 31, 2023 at the latest that it was going to do so in some form. (*See* Peterson Decl. ¶ 6, Ex. D at 2-3.)

The USA should not be allowed to remain silent for 19 days, fail to confer with the other parties on the Subpoena, then file a motion to quash after the date of compliance for the Subpoena. To do so constitutes an untimely motion under Rule 45(d)(3)(A).

### III. The Materials Sought by the Subpoena Are Subject to Disclosure.

#### A. The FOIA "commercial privilege" and "confidential commercial information" exemptions do not apply.

The USA's entire Argument Section II is a red herring because it relies exclusively on Freedom of Information Act (FOIA) exemptions and FOIA cases. But those FOIA exemptions do not apply here, in a non-FOIA case.[7]

---

[7] *See Ass'n for Women in Sci. v. Califano*, 566 F.2d 339, 342-43 (D.C. Cir. 1977) ("At the outset, it must be emphasized that AWIS sought the Forms 474 through the discovery process and not through an FOIA request. As we shall discuss below, any matter which is relevant to the subject matter involved in the pending action can be discovered, unless it is privileged. The Government's assertion of exemptions 4 and 6 of the FOIA as defenses to production, therefore, must be read as a claim of privilege, and as such is clearly inapposite. *The FOIA neither*

The USA's arguments here are without merit. *See Assn'n for Women in Sci. v. Califano*, 566 F.2d 339, 342-43 (D.C. Cir. 1977). The USA is attempting to use its sovereign position as both a sword (bringing an affirmative suit for trespass and ejectment, implicating the Homeowners' interests opposing the USA's claims) and as a shield (making meritless arguments about FOIA exemptions in a non-FOIA suit brought by the USA). The USA seems to think the Subpoena is a FOIA request and this is a FOIA case. But a subpoena is in the nature of a court order, not a FOIA request. And here the USA has asserted trespass and ejectment claims, opposed by the Homeowners' Fifth Amendment due process and Takings claims, and easements causes of action. (ECF No. 1 ¶¶ 60-76; ECF No. 29 ¶¶ 256-388.) None of the parties' claims or defenses has anything to do with FOIA, FOIA exemptions, or the public's ability to get agency records under FOIA.[8] The USA should not be countenanced to bring a trespass suit, thereby putting the value of the use of the lands at issue, and then point to an irrelevant regulatory and statutory scheme (FOIA) to attempt to block discovery of directly relevant information. Such attempts have been expressly rejected by numerous federal courts. *See, e.g.*, *Califano*, 566 F.2d at 342-43.[9]

---

expands nor contracts existing privileges, nor does it create any new privileges. As intimated in its brief, and explicitly stated at oral argument, the Government wisely has abandoned the FOIA argument on appeal. Our analysis, therefore, will proceed based upon traditional discovery theory." (emphasis added) (citations omitted)).

[8] The Town of Lac du Flambeau is a party to a separate case where FOIA is at issue. *See Town of Lac du Flambeau v. Dep't of Interior*, No. 3:23-CV-00582-wmc (W.D. Wis. filed Aug. 24, 2023). This case is not that case.

[9] *See also Romacorp, Inc. v. Prescient, Inc.*, No. 10-22872-Civ, 2011 WL 2312563, at *3 (S.D. Fla. June 8, 2011):

> Judge Turnoff's Order does not concern any request for documents or other information pursuant to the FOIA; rather, Plaintiff has requested documents and information pursuant to the Federal Rules of Civil Procedure. The FOIA disclosure regime is distinct from civil discovery. *See Eden Isle Marina, Inc. v. United States*, 89 Fed.[Cl.] 480, 495 ([] 2009); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 73[8] F .2d 1336, 1344 (D.C. Cir. 1984). Further, 'the FOIA neither expands nor contracts existing privileges, nor does it create any new privileges.' *Canal Auth. v. State of Florida* [*v. Froehlke*], 81 F.R.D. 609, 612 (quoting *Ass'n for Women in Sci[.] v. Califano*, 566 F.2d 339, 343 (D.C. Cir. 1977)). If Romacorp eventually requests documents pursuant to the FOIA and/or brings a FOIA action against the FDIC, the FDIC may invoke any applicable

*All* the cases relied on by the USA are FOIA cases, derivative of FOIA requests, and deal only with FOIA exemptions under the FOIA regime. (*See* Gov't Br. at 9-14.) None deals with a subpoena issued to an appraiser in a non-FOIA common law trespass case brought by the USA where the subject appraised land is the property at issue in the trespass case. The cases cited by the USA are not relevant to this non-FOIA case and an analysis of whether the subpoenaed documents are privileged. *See Califano*, 566 F.2d at 342-43; *Romacorp, Inc. v. Prescient, Inc.*, No. 10-22872-CIV, 2011 WL 2312563, at *3 (S.D. Fla. June 8, 2011); *Canal Auth. of Florida v. Froehlke*, 81 F.R.D. 609, 612 (M.D. Fla. 1979). FOIA and FOIA exemptions deal with the public's right to information *under FOIA*. FOIA does not have anything to do with traditional discovery and privilege theory in this trespass suit, and the subject appraisals which shed light on "the value of the use of the roads over time [which] goes to the very heart of the United States' claim for trespass damages because use (or alleged misuse) of the roads and the value thereof is the essence of the United States' suit." (Peterson Decl. Ex. D at 2.)

Crucially, the USA fails to cite a single case or authority that supports the idea that FOIA exemptions can somehow create a privilege under Rule 45 in a non-FOIA case. In fact, the United States Court of Appeals for the District of Columbia Circuit has expressly stated that what the government is trying to do is impermissible and noted that "the Government ha[d] wisely abandoned the FOIA argument on appeal." *Califano*, 566 F.2d at 342-43; *see also*

---

exemptions. *See Stonehill v. I.R.S.*, 558 F.3d 534, 538 (D.C. Cir. 2009). Judge Turnoff's Order applies only to discovery requests, not FOIA requests."

*See also Froehlke*, 81 F.R.D. at 612 ("In addressing this issue, it is important to note that the defendants' reliance upon the FOIA as a defense to production is misplaced. Since the information is sought through the discovery process and not through an FOIA request, the defendants' assertion that the information is within exemption 4 of the FOIA as 'commercial or financial information obtained from a person and privileged or confidential,' 5 U.S.C. s. 552(b)(4), must be read as a claim of privilege within the context of the discovery process.").

*Romacorp*, 2011 WL 2312563, at *3; *Froehlke*, 81 F.R.D. at 612. For these reasons, the Court should deny the USA's Motion to Quash.

Moreover, the USA's brief is misleading in stating that "[t]he Federal Government's civil discovery privileges include the commercial information privilege." (Gov't Br. at 9.) This statement omits the second half of the proposition; the government's civil discovery privileges include the commercial information privilege *only in FOIA cases*. *See Califano*, 566 F.2d at 342-43; *see also Romacorp*, 2011 WL 2312563, at *3; *Froehlke*, 81 F.R.D. at 612.[10] This is not a FOIA case. Consequently, the USA cannot rely on an inapposite regulatory and statutory scheme, which Congress enacted to address the *public's* ability to get records from federal agencies, to shield squarely relevant materials in a federal common law trespass suit brought by the USA that is governed by traditional civil discovery privilege law.[11] FOIA exemptions do not so expand. *Califano*, 566 F.2d at 342-43; *Romacorp*, 2011 WL 2312563, at *3; *Froehlke*, 81 F.R.D. at 612.

For example, the USA relies on *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 (1978), a FOIA case that questioned whether the Federal Open Market Committee's practice of withholding certain monetary policy directives *from the public* during the month they

_____

[10] *See also McClelland v. Andrus*, 606 F.2d 1278, 1285 & n.47 (D.C. Cir. 1979) ("Both the Department of Interior and the District Court shielded the report from disclosure on the ground that it came within the purview of various exemptions to the FOIA. We find this reliance on the FOIA to be misplaced. Appellant requested the report not as a member of the public entitled to it under the FOIA, but as a private individual in the throes of agency proceedings adjudicating his claim of arbitrary removal. Accordingly, in analyzing this case we employ traditional discovery doctrines as applied to agency proceedings.47 [n.47: quoting and citing *Califano*, 566 F.2d at 342.] We intimate no view on whether the Interior Department would be required to disclose the report to a member of the public seeking it under the FOIA.").

[11] The Homeowners can only guess that the government knows the subpoenaed documents will show the Tribe's grossly disproportionate demand of $20 million for rights-of-way that (as the appraisals likely show) are worth a fraction of that $20 million demand. In other words, the Homeowners can only guess that the USA's actual reason for moving to quash a subpoena seeking relevant documents is to placate the Tribe, not the seemingly more virtuous pursuit of unidentified and unexplained "legitimate agency objectives." (Gov't Br. at 11 n.6.)

are in effect *violates FOIA*. (*See* Gov't Br. at 9.)[12] There, the Supreme Court held that, *under 5 U.S.C. § 552(b)(5), FOIA Exemption 5* incorporates a qualified privilege for confidential commercial information *in suits brought under FOIA*. *Merrill*, 443 U.S. at 360; *see also id.* at 354-57 (noting that "we see no reason why the Government could not, in an appropriate case, obtain a protective order under Rule 26(c)[(1)(G)].").[13]

Similarly, the government cites to and relies upon *Government Land Bank v. General Services Administration*, 671 F.2d 663, 665 (1st Cir. 1982) which dealt with *whether FOIA* required the federal General Services Administration (GSA) to disclose an appraisal of realty to a state agency *in FOIA litigation* that was seeking to buy the property from GSA. *Id.* at 664. *The plaintiff there sued under FOIA*. The appraisal there was not sought via subpoena in a case where the USA sued for trespass. The Homeowners here are intervenor-defendants—not FOIA plaintiffs—standing in a defensive posture to the USA's trespass claims. The USA here has brought trespass and ejectment claims implicating the Homeowners and their liberty and property interests and affirmatively putting at issue the value of use of the lands. The appraisal materials sought by the Subpoena, which is not a FOIA request, go to the heart of the USA's case and defenses thereto. The USA cannot rely on FOIA exemptions as broad privileges in civil litigation that has nothing to do with FOIA. *Califano*, 566 F.2d at 342-43; *Romacorp*, 2011 WL

---

[12] The government fails to state that the plaintiff *in that FOIA case* was not a party defending against a suit brought by the USA for trespass and ejectment. The plaintiff was simply *a member of the public*—a student at Georgetown University Law Center and a member of the Institute for Public Interest Representation who claimed he had a strong interest in administrative law and the operation of Federal government agencies and thus brought a challenge under FOIA arguing that the government's policy of deferring public availability and delaying public release of records violates FOIA. *Merrill v. Fed. Open Mkt. Comm.*, 413 F. Supp. 494, 497–99 (D.D.C. 1976).

[13] *See infra*, Section III(C). A protective order and confidentiality designations in the USA's affirmative suit for trespass and ejectment would vitiate any concerns the government might have about the subpoenaed documents becoming public, which is what FOIA deals with and is concerned with. *FDIC v. Broom*, No. 12-cv-03145-PAB-MEH, 2013 WL 4781706, at *2 (D. Colo. Sept. 5, 2013) (holding that "[b]ecause the protective order addresses the [] Defendants' confidentiality concerns and potential prejudice to outside parties, neither the USPAP nor [*United States. v. 25.02 Acres of Land*, 495 F.2d 1398 (10th Cir. 1974)] preclude production of the appraisals in this case.").

2312563, at *3; *Froehlke*, 81 F.R.D. at 612. This is especially true here, where the government has put at issue the appraisals by suing for liability and damages for trespass.

Similarly, the USA relies on the inapposite case *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019), and FOIA, 5 U.S.C. § 552(b)(4). (*See* Gov't Br. at 12-14.) That case (and statute) is irrelevant because it again is *a FOIA case brought by a FOIA requester. Food Mktg. Inst.*, 139 S. Ct. at 2361, 2366. The plaintiff there was a South Dakota newspaper that sued the USDA under FOIA, and the FOIA request sought the names and addresses of all retail stores that participated in the SNAP national food-stamp program and each store's annual SNAP redemption data from certain years. *Id.* The Court thus analyzed FOIA Exemption 4 because it was invoked by the USDA in response to a FOIA request and in the subsequent FOIA suit. *Id.* at 2361-66.[14]

In sum, all the cases the government relies on deal with *FOIA requests, lawsuits brought under FOIA,* and *the public's right (or lack thereof under FOIA exemptions) to agency records under FOIA* and thus do not affect privilege law in this trespass case. *See Califano*, 566 F.2d at 342-43; *Romacorp*, 2011 WL 2312563, at *3; *Froehlke*, 81 F.R.D. at 612. The case law is contrary to the underlying premise of the USA's entire argument. *See Califano*, 566 F.2d at 342-43; *Romacorp*, 2011 WL 2312563, at *3; *Froehlke*, 81 F.R.D. at 612. FOIA exemptions are not "privileges" under Rule 45 in a case that is wholly independent of FOIA. This Court should reject the government's argument.

---

[14] The government cites additional irrelevant FOIA cases in its irrelevant "FOIA Exemption 4" discussion. (*See, e.g.*, Gov't Br. at 13 (*Flathead Joint Bd. of Control v. U.S. Dep't of Interior*, 309 F. Supp. 2d 1217, 1221 (D. Mont. 2004) (a FOIA requester brought suit under FOIA; an Order based on a *Vaughn* index); *Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188, 1195 (S.D. Cal. 2002) (a FOIA requester brought suit under FOIA; an Order based on a *Vaughn* index).)

Further, the appraisal materials sought by the Subpoena are not privileged or otherwise protected under Rule 45. Federal courts have recognized that USPAP appraisals are non-privileged, relevant materials under the federal rules, particularly where the land that is the subject of the appraisal is the land that is the subject of the litigation.[15] The appraisals and documents sought by the Subpoena here are no different. As the Homeowners' counsel explained to the USA's counsel on November 1, 2023 with respect to relevance: because the USA sued for trespass,

> [t]he appraisals are directly relevant because the stated purpose set forth in the contract was to determine the 'market value appraisal for a right-of way on the subject properties,' which is nothing more than the value of the use of the roads over time. This goes to the very heart of the United States' claim for trespass damages because use (or alleged misuse) of the roads and the value thereof is the essence of the United States' suit.

(Peterson Decl. Ex. D at 2.) The USA has not at all addressed this point regarding relevance of the appraisals, thereby apparently conceding it.

Unlike the FOIA cases relied on by the government, the case of *United States v. 2,091,712 Acres of Land*, No. 4:09-CV-88-BO, 2010 WL 3363031(E.C.N.C. Aug. 24, 2010) is on point. *2,091,712 Acres of Land* was a Fifth Amendment (not FOIA) case, where the land's fair market value was at issue and a subpoena sought appraisal reports on that issue. *Id.* at *1. The appraisals there were ordered to be produced. *Id*. at *2.

---

[15] *See, e.g., United States. v. 2,091,712 Acres of Land*, No. 4:09-CV-88-BO, 2010 WL 3363031, at *1 (E.D.N.C. Aug. 20, 2010) ("The case is an eminent domain action taking a restrictive easement over two parcels of property adjacent to Marine Corps Air Station Cherry Point. . . . The appraisal reports at issue plainly fall within the ambit of Rule 26."; noting that "[t]he law does not afford an evidentiary privilege to professional appraisers. Moreover, the USPAP rules themselves explicitly contemplate the production of such documents to 'third parties as may be authorized by due process of law.'"); *Beach Cmty. Bank v. Cushman & Wakefield of Ga., Inc.*, No. 1:15-cv-4-HSO-JCG, 2016 WL 7974093, at *1-3 (S.D. Miss. Mar. 3, 2016) (denying motion to quash despite plaintiff's argument that the subpoena sought disclosure of an appraisal containing confidential privileged information and/or trade secrets).

Further, Rule 34 undermines the government's main policy argument that disclosure of the appraisal materials will "irretrievably corrupt any pending [ROW applications] negotiations." (Gov't Br. at 10-11 (claiming "if the Band or the Allottees were to set their asking price for the proposed ROW above the appraised value, as is their right, knowledge of the appraisal's conclusions would encourage prospective applicants to hold out for a lower figure.").) To start, this argument rings hollow since negotiations are not ongoing. *See infra*, Section III(D). Further, the Homeowners not only have the right to obtain the Steigerwaldt appraisals, but also the right under Rule 34 to inspect the property at issue and obtain additional appraisals under the rules of civil procedure.[16] Opinions from appraisers as to the value of the use of the Roadways and the underlying lands is therefore available through multiple mechanisms, including either by subpoena or Rule 34. The government has no basis to assert otherwise. If the government wanted to keep secret the conclusions of the Steigerwaldt appraisals while ROW applications are pending, then the government should not have brought suit for trespass and ejectment.[17]

## B. By putting at issue the value of use of the lands, the USA has waived any narrow qualified "privilege" or protection under Rule 45(d)(3)(A)(iii).

Assuming *arguendo* that the Steigerwaldt appraisal materials are protected under Rule 45(d)(3)(A)(iii) (which they are not as explained above), the USA has nonetheless waived any narrow protection of the appraisals by bringing an affirmative suit for trespass and ejectment. Rule 45(d)(3)(A)(iii) provides, "On timely motion, the court for the district where compliance is

---

[16] *See* Fed. R. Civ. P. 34 (a)(2) ("A party may serve on any other party a request within the scope of Rule 26(b): . . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.").

[17] Moreover, the SOW expressly acknowledges that FOIA only applies to the public at large, and the USA further admits in the SOW that the appraisals may be released to others beyond the Intended Users set forth in the SOW. (*See* ECF No. 32-3 at 7: "While the public is not an intended user of the appraisal report, the Freedom of Information Act (FOIA) and Agency policy *may result in the release of all or part of the appraisal report to others*." (emphasis added).)

required must quash or modify a subpoena that: …. (iii) requires disclosure of privileged or other protected matter, *if no exception or waiver applies*." *Id.* (emphasis added).

Waiver under Rule 45(d)(3)(A)(iii) occurs when a party raises the privileged or protected issue as part of a claim or defense. *In re Verizon Wireless*, No. CV TDC-19-1744, 2019 WL 4415538, at *5 (D. Md. Sept. 16, 2019). Here, the government did exactly that, by suing for trespass and putting squarely at issue the appraisal materials sought by the Subpoena, which show an appraiser's opinion of the value of the use of the lands at issue. It would be analogous to a personal injury plaintiff asserting her medical records are privileged. *Cf. Sincavage v. Schott N. Am.*, No. 3:18-CV-01231, 2018 WL 10068293, at *1 (M.D. Pa. Nov. 29, 2018) ("Sincavage has waived any doctor-patient privilege she previously enjoyed by placing her 'physical and mental condition at issue,' and has correspondingly made her medical records relevant."). Here, the same conclusion holds true. The value of the use of the lands is directly at issue and therefore the government has waived any putative claim of "privilege."

**C. Confidentiality is irrelevant to the Court's analysis of whether to quash the Subpoena.**

The Court should not be misled by the USA's conflation of the distinct concepts of privilege and confidentiality. (*See* Gov't Br. at 5-7.) Confidentiality standing alone is irrelevant to the question of whether something is "privileged" under discovery rules and traditional (non-FOIA) privilege theory. Documents are not immune from discovery merely because they are confidential. *FDIC v. Broom*, No. 12-cv-03145-PAB-MEH, 2013 WL 4781706, at *2 (D. Colo. Sept. 5, 2013); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684–85 (D. Kan. 2004) ("[A] concern for protecting confidentiality does not equate to privilege. Thus[,] information and documents are not shielded from discovery merely because they are confidential." (citation omitted)).

Additionally, in trying to support its argument regarding confidentiality, the USA sets forth an incorrect, improperly narrow definition of "affected landowners" that are referenced as "intended users" of the appraisals in the DOI's Letter of Engagement and Statement of Work. Specifically, the DOI's Letter of Engagement to Steigerwaldt states, "The intended users of the appraisal report are . . . the affected landowners." (ECF No. 32-1 at 11.) Likewise, the Statement of Work states, "Intended Users [include]: …. the affected landowners." (ECF No. 32-3 at 2.) The USA implies that "the affected landowners" means only the Allottees and excludes the affected Homeowners and ROW applicants. The Court should reject this narrow and wholly unsupportable definition.

If the DOI intended the words "affected landowners" in the LOE and SOW to mean only the Allottees and their successors and assigns, and not to mean the Applicants and their successors and assigns, then the DOI should and would have used the word "Allottees" or a more apt descriptor than "affected landowners" in the LOE and SOW. The Homeowners as Applicants in the ROW process are necessarily "affected landowners" as demonstrated by the fact that when tribal members barricaded the four Roads for six weeks earlier in 2023 (claiming a right to do so because the ROWs had expired), the Homeowners could not freely access their homes. The entire reason the Homeowners engaged in the ROW application process (before negotiations broke down after the Tribe's $20 million demand) was precisely because the Homeowners *are* affected landowners. The only reasonable conclusion is that the Homeowners, as Applicants for ROWs, are included in what is meant by "affected landowners" as used in both the LOE and SOW.

Moreover, various provisions of federal law refer to and define "affected landowners" broadly.[18] Although none of these provisions are directly on point, they support the conclusion that the Homeowners here are "affected landowners" among the intended users of the Steigerwaldt appraisals.

To address the USA's concerns of confidentiality, the Court could enter an appropriate confidentiality protective order rather than quashing the Subpoena in its entirety. *See* Fed. R. Civ. P. 26(c). Confidentiality always can be maintained through appropriate use of a confidentiality protective order. At the heart of the USA's Motion is an unwarranted concern that the subpoenaed materials, if publicly disclosed, would somehow disadvantage the United States (specifically, the BIA) or otherwise endanger the process of "assuring just compensation" for the ROWs at issue. (*See* Gov't Br. at 9-11.) The USA expresses this concern in the face of the Homeowners' direct challenge to the regulation the USA relies on, which regulation states that "[a] right-of-way over or across tribal land may allow for *any payment amount* negotiated by the tribe" and the Tribe can demand "*any compensation*" amount. 25 C.F.R. § 169.110 (emphasis added). (*See* ECF No. 29 ¶¶ 350-72.) The Homeowners' Counterclaims assert that this regulatory

---

[18] *See* 18 C.F.R. § 157.6(d)(2) ("All affected landowners includes owners of property interests, as noted in the most recent county/city tax records as receiving the tax notice, whose property: (i) Is directly affected (*i.e.*, crossed or used) by the proposed activity, including all facility sites (including compressor stations, well sites, and all above-ground facilities), rights of way, access roads, pipe and contractor yards, and temporary workspace; (ii) Abuts either side of an existing right-of-way or facility site owned in fee by any utility company, or abuts the edge of a proposed facility site or right-of-way which runs along a property line in the area in which the facilities would be constructed, or contains a residence within 50 feet of the proposed construction work area; . . . ."); *Columbia Gas Transmission, LLC*, 182 FERC ¶ 61,089 (Feb. 16, 2023) (interpreting "affected landowners" broadly under 18 C.F.R. § 157.6(d)(2)); 18 C.F.R. § 380.15(c)(2) ("'Affected landowners' include owners of interests . . . in properties (including properties subject to rights-of-way and easements for facility sites, compressor stations, well sites, and all above-ground facilities, and access roads, pipe and contractor yards, and temporary work space) that will be directly affected by (*i.e.*, used) and subject to ground disturbance as a result of activity under this section."); *see also* 2019, Dep't of Interior, Bureau of Land Mgmt., 2019 Memorandum of Understanding, Ex. 2, at PDF page 11, https://www.blm.gov/sites/default/files/docs/2023-06/NV-IM-2023-003%20Change%201%20Att%202.D%20Third%20Party%20MOU_example.pdf ("Project and scoping information will be distributed to appropriate local, state, and federal agencies, elected officials, public land users and user groups, *affected landowners*, and news outlets including newspapers and radio and television stations." (emphasis added)).

scheme amounts to an unconstitutional taking as applied, because, in part, the $20 million

demand appears to be completely unrelated to any fair market value of the use of the Roads.

(ECF No. 29 ¶¶ 350-72.) The Steigerwaldt appraisals are directly relevant to these claims. The

fact that the appraisals may lend support to the Homeowners' claims (or contrariwise may not

lend support if they justify a $20 million demand) is not reason to quash the Steigerwaldt

Subpoena.

Accordingly, if the Court agrees with the USA that the subpoenaed materials should be

shielded from public disclosure, the Court has the authority and discretion to enter a

confidentiality protective order that ensures that the information is revealed to only certain

groups or individuals and/or ensures that such information is only used in certain contexts (e.g.,

during the pendency of litigation). *See* Fed. R. Civ. P. 26(c). Such a result would be far more

equitable than quashing the Subpoena in its entirety.

### D. There are no "pending negotiations" for the ROW applications because the Tribe demanded $20 million before the appraisals were even approved by the DOI, effectively ending the negotiations—hence, this litigation.

The USA, the Town of Lac du Flambeau, and the Homeowners are in this litigation

because of the impasse in the ROW application process. That impasse was the Tribe's demand

for $20 million *before* the appraisals were even approved by the DOI. The USA has never

negotiated a price for new rights of way. The Homeowners are no longer asking for appraisals to

negotiate new rights of way. Thus, any argument that nonexistent "pending negotiations" (Gov't

Br. at 11) require the shielding of the appraisal materials is unwarranted. There are no pending

negotiations of any kind, only an unfortunate proliferation of lawsuits.

Furthermore, any assertion that there are "incomplete" ROW applications fails to paint

the full picture. Until the USA filed its Motion, the DOI/BIA had never asserted to the

Homeowners that the ROW applications were incomplete. (Hubing Decl. ¶ 3.) To the contrary,

AVSO issued the SOW for the appraisals upon completion and submission of the applications, and informed the Homeowners over a year ago that the next step in the ROW application process was the DOI giving the Homeowners a price. (*Id.*) The government has failed to do that and now implies that the Homeowners somehow are to blame, which is simply untrue.

The Homeowners have advanced the ROW application process as far as they could, and to assert otherwise is false. There is no reason to shield the Steigerwaldt appraisals from discovery — that ROW application process and any potential negotiations as part of that process are dead.

## CONCLUSION

For the foregoing reasons, the Homeowners respectfully request that the Court deny the United States' Motion to Quash.

Respectfully submitted this 30th day of November, 2023.

REINHART BOERNER VAN DEUREN S.C.
N16 W23250 Stone Ridge Drive
Suite 1
Waukesha, WI 53188

P.O. Box 2265
Waukesha, WI 53187-2265

Telephone:  262-951-4527
Facsimile:  262-951-4690

*/s/ David G. Peterson*
David G. Peterson
WI State Bar ID No. 1001047
dgpeterson@reinhartlaw.com
Bridget M. Hubing
WI State Bar ID No. 1029356
bhubing@reinhartlaw.com
Olivia J. Schwartz
WI State Bar ID No. 1115787
oschwartz@reinhartlaw.com
Samuel C. Sylvan
WI State Bar ID No. 1131339
ssylvan@reinhartlaw.com

*Attorneys for the Intervenor Defendant Homeowners*

50825269v4