IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff and,                Case No. 23-cv-355-wmc
        Counter Defendant,

   v.

TOWN OF LAC DU FLAMBEAU,

        Defendant and
        Counter Claimant,

   and

GORDON ANDERSON et al.,

        Intervenor Defendants and
        Intervenor Counterclaimants.

---

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS COUNTERCLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ....................................... 3

   I.   INDIAN RIGHT-OF-WAY ACT ............................................................. 3

   II.   TRIBAL TRANSPORTATION PROGRAM ........................................... 4

FACTUAL BACKGROUND ................................................................................. 6

ARGUMENT .......................................................................................................... 7

   I.   THIS COURT DOES NOT HAVE SUBJECT-MATTER JURISDICTION OVER COUNTS I THROUGH VII AND COUNT X OF THE COUNTERCLAIM BECAUSE THE UNITED STATES HAS NOT WAIVED ITS SOVEREIGN IMMUNITY TO THOSE CLAIMS ................................................................................................... 7

      A.   By Filing The Instant Action, The United States Has Not Implicitly Waived Its Sovereign Immunity To Any And All Claims. ........................................................ 8

      B.   By Filing The Instant Action, The United States Has Not Implicitly Waived Its Sovereign Immunity To Counts I Through VII And Count X of the Counterclaim.. ............................................................................................ 10

      C.   Intervening Defendants Assert No Valid Statutory Waiver Of Sovereign Immunity ............................................................................................ 13

   II.   THE COURT SHOULD DISMISS COUNTS I THROUGH VII AND COUNT X PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE INTERVENING DEFENDANTS FAIL TO STATE PLAUSIBLE CLAIMS FOR RELIEF ..................................... 16

      A.   Counts I And IV Of The Counterclaim Fail To State Valid Procedural Due Process Claims. ............................................................................................ 17

      B.   Count II Fails to State A Plausible Substantive Due Process Claim. ............... 19

      C.   Counts III and VII Fail To State Valid Takings Claims ..................................... 22

      D.   Count X Fails To State A Cognizable Mandamus Claim. ................................. 25

      E.   Counts V And VI Fail To State Cognizable Due Process Claims. .................... 27

CONCLUSION ..................................................................................................... 30

i

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Newland,*
  No. 23-cv-777-wmc (W.D. Wis. filed Nov. 8, 2023)……………………………….. 26

*Arvanis v. Noslo Eng'g Consultants, Inc.,*
  739 F.2d 1287 (7th Cir. 1984) .................................................................................. 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 16, 17

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972)....................................................................................... 17, 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 16, 17

*Blitz v. Monsanto Co.,*
  317 F. Supp. 3d 1042 (W.D. Wis. 2018) ............................................................ 16

*Burke v. 401 N. Wabash Venture, LLC,*
  714 F.3d 501 (7th Cir. 2013) ................................................................................ 17

*Campos v. Cook Cnty.,*
  932 F.3d 972 (7th Cir. 2019) ................................................................................ 20

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia,*
  524 U.S. 367 (2004)............................................................................................... 26

*Cole v. United States,*
  657 F.2d 107 (7th Cir. 1981) ........................................................................... 8, 16

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992)............................................................................................... 20

*Doe v. City of Lafayette,*
  377 F.3d 757 (7th Cir. 2004) ......................................................................... 21, 22

*Duncan v. Duckworth,*
  644 F.2d 653 (7th Cir. 1981) ................................................................................ 29

*F.D.I.C. v. Meyer,*
  510 U.S. 471 (1994)................................................................................................. 8

*Fed. Sav. & Loan Ins. Corp. v. Quinn,*
  419 F.2d 1014 (7th Cir. 1969) ................................................................... 9, 10, 13

*Forest Cnty. Potawatomi Comty. of Wisconsin v. Doyle,*
  828 F. Supp. 1401 (W.D. Wis. 1993)................................................................... 17

*Fosnight v. Jones,*
  41 F.4th 916 (7th Cir. 2022) ................................................................................. 17

*Garcia v. Purdy,*
  No. 13-cv-0234 MCA/KBM, 2014 WL 12796880 (D.N.M. Mar. 11, 2014)...................... 30

*Green v. USFS,*
  No. 20-cv-1046-LAB-SBC, 2023 WL 5280912 (S.D. Cal. Aug. 16, 2023).......................... 24

*Gunn v. Kentucky*,
   No. 05-cv-28-JBC, 2005 WL 1079293 (E.D. Ken. Apr. 18, 2005) ........................................ 30

*Hoelscher v. United States*,
   No. 17-cv-542-jdp, 2018 WL 3466936 (W.D. Wis. July 18, 2018) ................................... 15

*Holt v. Davidson*,
   441 F. Supp. 2d 92 (D.D.C. 2006) ................................................................................ 15

*Ingraham v. Wright*,
   430 U.S. 651 (1977) ................................................................................................. 21

*Jennings v. Emry*,
   910 F.2d 1434 (7th Cir. 1990) ................................................................................... 29

*Kaiser Aetna v. United States*,
   444 U.S. 164 (1979) ................................................................................................. 26

*Kentucky Dep't of Corr. v. Thompson*,
   490 U.S. 454 (1989) ................................................................................................. 17

*Kight v. U.S. District Court, N. District of Georgia*,
   681 Fed. Appx. 882 (11th Cir. 2017) ......................................................................... 15

*Kinscherff v. United States*,
   586 F.2d 159 (10th Cir. 1978) ................................................................................... 30

*Knick v. Twp. of Scott, Pennsylvania*,
   139 S. Ct. 2162 (2019) ............................................................................................. 23

*Lane v. Pena*,
   518 U.S. 187 (1996) ................................................................................................... 8

*Lee v. Thornton*,
   420 U.S. 139 (1975) ................................................................................................. 15

*Lindell v. McCallum*,
   352 F.3d 1107 (7th Cir. 2003) ................................................................................... 29

*Lukaszczyk v. Cook Cnty*,
   47 F.4th 587 (7th Cir. 2022) ..................................................................................... 20

*Makhsous v. Daye*,
   980 F.3d 1181 (7th Cir. 2020) ................................................................................... 18

*Muirhead v. Mecham*,
   427 F.3d 14 (1st Cir. 2005) ................................................................................. 15, 18

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ................................................................................................. 16

*O'Bannon v. Town Ct. Nursing Ctr.*,
   447 U.S. 773 (1980) ................................................................................................. 22

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ................................................................................................. 19

*Oneida Indian Nation of N.Y. v. Cnty. of Oneida*,
   414 U.S. 661 (1974) ........................................................................................... 1, 3, 22

*Oneida Indian Nation of N.Y. v. New York*,
   194 F. Supp. 2d 104 (N.D.N.Y. 2002) ........................................................................... 9

*Palmer v. Comm'r of Internal Revenue,*
  62 Fed. Appx. 682 (7th Cir. 2003) .................................................................. 15
*Pollard v. Johnson,*
  No. 23-cv-135-wmc, 2023 WL 6276403 (W.D. Wis. Sept. 26, 2023) ........................ 7, 12, 19
*RDB Properties v. City of Berwyn,*
  844 Fed. Appx. 878 (7th Cir. 2021) .................................................................. 25
*Ruckelshaus v. Monsanto Co.,*
  467 U.S. 986 (1984) .................................................................................... 23
*S. Cal. Fin. Corp. v. United States,*
  634 F.2d 521 (Ct. Cl. 1980) ........................................................................... 24
*Sorrentino v. Godinez,*
  777 F.3d 410 (7th Cir. 2015) .......................................................................... 24
*Stop the Beach Renourishment v. Fla. Dep't of Env't Prot.,*
  560 U.S. 702 (2010) .................................................................................... 23
*Tabb Lakes Ltd. v. United States,*
  10 F.3d 796 (Fed. Cir. 1993) .......................................................................... 24
*Tun v. Whitticker,*
  398 F.3d 899 (7th Cir. 2005) .......................................................................... 20
*United States ex rel. Fallon v. Accudyne Corp.,*
  921 F. Supp. 611 (W.D. Wis. 1995) .................................................................... 9
*United States v. Karlen,*
  476 F. Supp. 306 (D.S.D. 1979) ....................................................................... 10
*United States v. Mitchell,*
  463 U.S. 206 (1983) ..................................................................................... 8
*United States v. Salerno,*
  481 U.S. 739 (1987) .................................................................................... 20
*United States v. Shaw,*
  309 U.S. 495 (1940) .................................................................................. 8, 10
*United States v. Sherwood,*
  312 U.S. 584 (1941) ..................................................................................... 8
*United States v. Tsosie,*
  92 F.3d 1037 (10th Cir. 1996) ........................................................................ 13
*United States v. Univ. of N.M.,*
  731 F.2d 703 (10th Cir. 1984) ..................................................................... 22, 26
*United States v. Washington,*
  19 F. Supp. 3d 1317 (W.D. Wash. 2000) .............................................................. 10
*Vicom v. Harbridge Merch. Servs., Inc.,*
  20 F.3d 771 (7th Cir. 1994) ....................................................................... 28, 29
*Wade v. Hopper,*
  993 F.2d 1246 (7th Cir.) ............................................................................... 28
*Wagstaff v. United States,*
  105 Fed. Cl. 99 (2012) ................................................................................. 24

iv

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ................................................................ 20, 21
*Wells v. Franzen,*
   777 F.2d 1258 (7th Cir. 1985) ........................................................ 21
*Youngberg v. Romeo,*
   457 U.S. 307 (1982) ...................................................................... 21

**Federal Statutes**

23 U.S.C. § 101(a)(33) ............................................................... 5, 27
23 U.S.C. §§ 201-202 ....................................................................... 4
23 U.S.C. § 202 ............................................................................... 18
23 U.S.C. § 202(a)(1) ........................................................................ 5
23 U.S.C. § 202(b)(1)(A) .................................................................... 5
23 U.S.C. § 202(b)(1)(B) ............................................................... 5, 27
23 U.S.C. § 202(b)(4)(B) .................................................................... 5
25 U.S.C. § 177 ........................................................... 1, 3, 18, 22
25 U.S.C. §§ 323-328 ............................................... 1, 3, 18, 22, 25
25 U.S.C. § 324 ............................................................................ 2, 4
25 U.S.C. § 325 ............................................................................... 4
28 U.S.C. § 1331 ............................................................................ 14
28 U.S.C. § 1346 ............................................................................ 14
28 U.S.C. § 1346(a)(2) ............................................................... 14, 15
28 U.S.C. § 1346(b)(1) .................................................................... 15
28 U.S.C. § 1346(f) ......................................................................... 15
28 U.S.C. § 1367 ...................................................................... 14, 15
28 U.S.C. § 1651 ...................................................................... 14, 15
28 U.S.C. §§ 2201-02 ...................................................................... 14
Moving Ahead for Progress in the 21st Century Act,
   Pub. L. 112-141 (July 6, 2012) ........................................................ 5

**Federal Regulations**

25 C.F.R. §§ 169.107-114 ................................................................ 12
25 C.F.R. § 169.110 .................................................................. 23, 29
25 C.F.R. § 169.110(a) ................................................................... 12
25 C.F.R. § 169.114(b)(2) .................................................................. 4
25 C.F.R. § 169.114(c) ..................................................................... 4
25 C.F.R. § 169.202(a)(4) .................................................................. 4
25 C.F.R. § 170.2(h) ........................................................................ 5
25 C.F.R. § 170.5 ...................................................................... 5, 27
25 C.F.R. § 170.114(a) ......................................................... 18, 26, 27
25 C.F.R. § 170.114(c) .................................................................... 28
25 C.F.R. §§ 170.443-447 .................................................................. 5

25 C.F.R. § 170.444(b) ................................................................................ 6, 27
25 C.F.R. Part 169 ............................................................................................ 4
25 C.F.R. Part 170 ....................................................................................... 4, 18

## Court Rules

Fed. R. Civ. P. 8 ........................................................................................ 28, 31
Fed. R. Civ. P. 8(a) ................................................................................... 28, 30
Fed. R. Civ. P. 8(a)(2) ..................................................................................... 28
Fed. R. Civ. P. 8(d)(1) .............................................................................. 28, 30
Fed. R. Civ. P. 12 ............................................................................................. 3
Fed. R. Civ. P. 12(b)(1) ............................................................................. 3, 31
Fed. R. Civ. P. 12(b)(6) ........................................................................... passim
Fed. R. Civ. P. 13(b) ...................................................................................... 10
Fed. R. Civ. P. 13(d) ...................................................................................... 10
Fed. R. Civ. P. 24(b) ........................................................................................ 7

## Miscellaneous

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
   (3d ed. 2004) ............................................................................................... 3
6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND
   PROCEDURE (3d ed. 2010) .................................................................... 8, 10
81 Fed. Reg. 78456-01 (Nov. 7, 2016) ............................................................ 5
Bureau of Indian Affairs, *Rights-of-Way on Indian Lands Handbook*, 52 IAM 9-H
   (Office of Trust Services, Jan. 10, 2022) ........................................... 28
COHEN'S HANDBOOK OF FEDERAL INDIAN LAW (Nell Jessup Newton ed., 2012) ........... 1, 4

## INTRODUCTION

This trespass case is about tribal lands, not public lands. Pursuant to the Nonintercourse Act, 25 U.S.C. § 177, tribal lands—and interests in those lands—can only be validly conveyed pursuant to congressional authorization. *Oneida Indian Nation of N.Y. v. Cnty. of Oneida* ("*Oneida I*"), 414 U.S. 661, 667-670 (1974). Congress has provided the Indian Right-of-Way Act ("ROW Act"), 25 U.S.C. §§ 323-328, as the path to apply for and secure right-of-way access to tribal and individual Indian lands. Absent a valid right-of-way through the ROW Act, "the user of a right-of-way over Indian lands obtains no interest in those lands and may be held to be a trespasser." COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 15.09[4], at 1064 (Nell Jessup Newton ed., 2012) ("COHEN'S HANDBOOK 2012").

Plaintiff the United States of America brought this trespass action on its own behalf and as a trustee for the Lac du Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation of Wisconsin ("Band") and seventy-six individual Indian landowners ("Allottees") against the Town of Lac du Flambeau ("Town") to remedy the Town's continuous and ongoing trespass on lands that the United States holds in trust or restricted-fee status for the Band and the Allottees. Specifically, the United States alleges that the Town continues to use and occupy four roads within the exterior boundaries of the Lac du Flambeau Reservation ("Reservation")—Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane (the "Roads")—despite having no valid rights-of-way to use the Roads. *See generally* Dkt. 1. Eighty-two non-Indian property owners who use the Roads

to access their respective properties moved to intervene as defendants in the United

States' trespass action (Dkt. 10), and the Court granted that motion (Dkt. 25). Shortly

thereafter, Intervening Defendants filed their Answer and Counterclaim (Dkt. 29).

Intervening Defendants, in their array of ten counterclaims, allege that the

United States violated numerous of their constitutional rights. Dkt. 29 at 39-101. The gist

of the eight counterclaims that are the subject of this motion is that—notwithstanding

the lands at issue being tribal land held in trust or restricted fee by the United States,

which Intervening Defendants concede, *id.* at 39, ¶ 3—the United States and this Court

should force the Band and Allottees to open their property to the public, despite there

being no valid rights-of-way for the Roads under the ROW Act, *id.* at 40, ¶¶ 6, 8. That is,

Intervening Defendants are asking this Court to order the United States to keep these

tribal lands open for the benefit of Intervening Defendants, and in contravention of the

Band's and Allottees' (and the United States') property rights and authority over their

own lands and the authority enumerated to the Band in the ROW Act, 25 U.S.C. § 324

("[n]o grant of a right-of-way . . . shall be made without the consent of the proper tribal

officials"). Dkt. 29 at 99 ¶¶ D-F (prayer for relief). All this, even though it was the

Town's responsibility to secure valid rights-of-way for the Roads to ensure continued

access, and that the Town failed to do so, as some Intervening Defendants

acknowledge. *See* Complaint, *Hornbostel v. Town of Lac du Flambeau*, Vilas County Case

No. 2023-cv-000068, at 10 ¶ 42 (filed July 14, 2023) ("By failing to secure permanent,

unrestricted public road access for [plaintiffs] and other property owners affected by the

barricades, the Town has taken Property without providing just compensation.");

Complaint, *Beer Jr. v. Town of Lac du Flambeau*, Vilas County Case No. 2023-cv-000078, at

10 ¶ 42 (filed July 31, 2023) (same).

As set forth below, eight of the ten counterclaims should be dismissed under

Fed. R. Civ. P. 12. Counts I (One) through VII (Seven) and Count X (Ten) go far beyond

the United States' limited waiver of sovereign immunity in this case, and this Court

therefore lacks subject-matter jurisdiction over those claims. Fed. R. Civ. P. 12(b)(1).[1] In

the alternative, those same eight counterclaims should be dismissed for failure to state a

claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). For all the reasons stated

below, the United States respectfully requests that the Court dismiss Counts I through

VII, and Count X.[2]

## STATUTORY AND REGULATORY BACKGROUND

### I.      INDIAN RIGHT-OF-WAY ACT

Tribal lands and interests in those lands—including rights-of-way—can only be

validly conveyed pursuant to unambiguous congressional authorization.

Nonintercourse Act, 25 U.S.C. § 177; *Oneida I*, 414 U.S. at 667-670. The ROW Act, 25

---

[1] Intervening Defendants plead the following counterclaims: Count I: Violation of Homeowners'
Procedural Due Process Rights—U.S. Const. amend. V; Count II: Violation of Homeowners'
Substantive Due Process Rights—U.S. Const. amend. V; Count III: Violation of Takings
Clause—U.S. Const. amend. V; Count IV: Violation of Homeowners' Procedural Due Process
Rights—U.S. Const. amend. V; Count V: Violation of Homeowners' Due Process Rights—U.S.
Const. amend. V; Count VI: Violation of Homeowners' Due Process Rights—U.S. Const. amend.
V; Count VII: Violation of Takings Clause—U.S. Const. amend. V; Count VIII: Easement by
Necessity; Count IX: Implied Easement; and Count X: Petition in the Nature of Mandamus.

[2] The United States' filing of this Partial Motion to Dismiss suspends the time the United States
has to respond to the remaining two counterclaims—Counts VIII and IX—not challenged here.
*See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1346, at 38-47 (3d ed. 2004) (citing cases).

U.S.C. §§ 323-328, and the implementing regulations found at 25 C.F.R. Part 169, since its enactment in 1948, has authorized the Secretary of the Interior to grant rights-of-way across trust and restricted lands of both Tribes and individual Indians. 25 U.S.C. § 324. With respect to tribal trust land, the ROW Act contains two requirements for granting a right-of-way. First, "[n]o grant of a right-of-way . . . shall be made without the consent of the proper tribal officials." *Id.* Second, "[n]o grant of right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just." *Id.* § 325. To satisfy the statutory requirement of determining "just" compensation prior to approving a right-of-way application, the Secretary—through the BIA—obtains a market-value appraisal of the lands subject to the right-of-way application. 25 C.F.R. § 169.114(c). The applicant can hire a third-party appraiser to provide the BIA the requisite market analysis appraisal. 25 C.F.R. § 169.114(b)(2). Grants of right-of-way must be for a term of years, and to renew a right-of-way the applicant must apply for a renewal before that right-of-way expires. 25 C.F.R. § 169.202(a)(4). Absent compliance with the ROW Act, "the user of a right-of-way over Indian lands obtains no interest in those lands and may be held to be a trespasser." COHEN'S HANDBOOK 2012 § 15.09[4] at 1064.

## II.     TRIBAL TRANSPORTATION PROGRAM

The Tribal Transportation Program ("TTP"), authorized at 23 U.S.C. §§ 201-202 and implemented through Department of the Interior ("Interior") regulations found at 25 C.F.R. Part 170, is a funding program that was established for the "benefit of Tribes."

25 C.F.R. § 170.2(h).[3] It was designed to provide "safe and adequate transportation and public roads" within or providing access to Tribal lands, through the allocation of federal funds. 81 Fed. Reg. 78,456, 78,456-57 (Nov. 7, 2016). Federally recognized tribes receiving funding through the TTP can expend those funds on surface transportation needs, including transportation planning and construction, roadway and facility maintenance, environmental mitigation as it relates to transportation facilities, and other critical transportation infrastructure needs. 23 U.S.C. § 202(a)(1) (use of federal funds); *see also* 23 U.S.C. § 101(a)(33) (defining a "tribal transportation facility").

For a road or transportation facility to be eligible for the expenditure of TTP funds, it must be listed on the National Tribal Transportation Facility Inventory ("NTTFI"). 23 U.S.C. § 202(b)(1)(B); *see also* 25 C.F.R. § 170.5 (further defining the NTTFI). The NTTFI is maintained by the Secretary, and Tribes must submit certain documentation to the Secretary to have a road or facility listed on the NTTFI. 25 C.F.R. §§ 170.443-447. Once a roadway or facility is listed on the NTTFI, the Tribe may expend its TTP funds on that road or facility in accordance with the Tribe's Federal Highway Administration ("FHWA")-approved "tribal transportation improvement program," or "TTIP."[4] *See* 23 U.S.C. § 202(b)(4)(B). If a Tribe wants to update data for a road already

---

[3] Until 2012, the TTP was known as the "Indian Reservation Roads" when Congress changed the name as part of the Moving Ahead for Progress in the 21st Century Act ("MAP-21"), Pub. L. 112-141 (July 6, 2012). Similarly, the NTTFI was formerly known as the Indian Reservation Roads Inventory until MAP-21's enactment.

[4] Defined by the TTP regulations at 25 C.F.R. § 170.5, a TTIP is a "multi-year list of proposed transportation projects developed by a Tribe from the Tribal priority list or the long-range transportation plan."

on the NTTFI, including removing it from the NTTFI, the Tribe can submit the update

to the BIA. 25 C.F.R. § 170.444(b). The BIA will carry out the ministerial act of removing

the roadway or facility from the NTTFI after the BIA verifies that the Tribe has not

expended federal transportation funds on that roadway or facility.

## FACTUAL BACKGROUND

The United States, acting through the Bureau of Indian Affairs ("BIA"), holds the

lands at issue in this case in trust or restricted-fee status for the Band and the Allottees.

These lands are within the exterior boundaries of the Reservation. In the 1960s, the BIA

approved and granted to private land developers grants of easement for rights-of-way

for the Roads (the "ROWs"), pursuant to the ROW Act. Each ROW had a fifty-year term

or was limited by regulation to fifty years in duration. Sometime after approval, the

developers assigned the ROWs to the Town. The ROWs for each of the Roads expired

by their terms at various times in 2011, 2014, and 2018. The Town failed to submit

timely renewal applications for the ROWs and to date has not applied for new ROWs.

The Town continues to use the Band's and Allottees' land unlawfully, without a valid

grant or authorization from the BIA.

In 2017, some non-Indian landowners—including some of the Intervening

Defendants—began the right-of-way application process under Part 169 to secure

continued access to the Roads. By early 2023, however, negotiations over the new

ROWs stalled. The Band, on January 19, 2023, after years of ongoing trespasses on its

lands by the Town and landowners, notified the Town, the ROW applicants, and title

insurance companies that, without valid ROWs, the Band planned to limit road access

as of January 31. On January 31, 2023, the Band asserted its sovereign authority over the Roads and closed them to non-tribal member access by use of physical barricades. *See Pollard v. Johnson*, No. 23-cv-135-wmc, 2023 WL 6276403, at *2 (W.D. Wis. Sept. 26, 2023). The Band reopened the roads to public use on March 13, 2023, pursuant to monthly access permits negotiated between the Band and the Town. Notwithstanding this ongoing, temporary access—which has continued from March 2023 to the present—the Town has not brought the portions of the Roads at issue into conformity with the requirements of the ROW Act, and as a result the Town's continued use of the roads constitutes a trespass.

The United States brought this action against the Town to remedy the Town's continuous and ongoing trespass. Eighty-two of the Intervening Defendants, all of whom use the Roads to access their respective properties, moved to intervene as defendants in the action (Dkt. 10). The Court granted the motion to intervene pursuant to Fed. R. Civ. P. 24(b) (Dkt. 25),[5] and, on October 24, 2023, the Intervening Defendants filed their Answer and Counterclaim (Dkt. 29). The United States now respectfully moves this Court to dismiss Counts I through VII and Count X of the Counterclaim.

---

[5] After the Court granted intervention, the parties stipulated to the addition of two additional non-Indian property owners to the group of Intervening Defendants. *See* Dkt. 27.

**ARGUMENT**

**I.    THIS COURT DOES NOT HAVE SUBJECT-MATTER JURISDICTION OVER COUNTS I THROUGH VII AND COUNT X OF THE COUNTERCLAIM BECAUSE THE UNITED STATES HAS NOT WAIVED ITS SOVEREIGN IMMUNITY TO THOSE CLAIMS**

"Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The scope of a waiver of sovereign immunity is strictly construed in favor of the United States. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also United States v. Shaw*, 309 U.S. 495, 503 (1940). Any party who sues the United States bears the burden of proving a valid waiver of sovereign immunity. *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981). With respect to Counts I through VII, Dkt. 29 at 81-95 ¶¶ 256-372, and Count X, *id.* at 97-99 ¶¶ 389-401, Intervening Defendants fail to satisfy this burden.

**A.    By Filing The Instant Action, The United States Has Not Implicitly Waived Its Sovereign Immunity To Any And All Claims.**

Intervening Defendants allege a multitude of counterclaims against the United States, but only two of these rest upon an applicable waiver of the United States' sovereign immunity—the rest lack a cognizable jurisdictional basis. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The United States does not waive its sovereign immunity to any and all counterclaims by filing its own suit in its own courts, for "a counterclaim, like any other claim against the United States, can be interposed only when the government has waived its immunity

-8-

from suit on that claim." 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1427 at 228. There is simply "no automatic waiver of immunity as to counterclaims when the United States . . . brings a lawsuit, and thus no general right of defendants to bring counterclaims against the United States . . . ." *Oneida Indian Nation of N.Y. v. New York*, 194 F. Supp. 2d 104, 136 (N.D.N.Y. 2002); *see* 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1427 at 228-29 ("It is possible . . . to argue that when the United States commences an action it assumes the position of a private litigant and submits itself to the court's full jurisdiction as to any counterclaim that defendant might interpose. However, the courts have firmly rejected this theory of a general waiver by implication.").

The filing of a lawsuit by the United States can provide a very limited implied waiver of sovereign immunity, even absent an explicit statutory waiver of that immunity. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969) (sovereign immunity can be waived either by statute or the filing of a suit). But absent an explicit statutory sovereign-immunity waiver, a waiver of sovereign immunity can only be implied from the Government's filing of an affirmative action if a counterclaim asserts a matter of "recoupment arising out of the same transaction or occurrence which is the subject matter of the [United States'] suit, to the extent of defeating the [United States'] claim." *Quinn,* 419 F.2d at 1017; *see also United States ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 618 (W.D. Wis. 1995) ("the commencement of an action by the United States is a limited waiver of sovereign immunity for counterclaims against the government if the counterclaim arises out of the same

transaction or occurrence as the government claims and the relief neither exceeds nor differs in kind from that sought by the United States").

The implied waiver of sovereign immunity, then, "does not extend to what federal procedure terms 'permissive' counterclaims, see Fed. R. Civ. P. 13(b), claims for affirmative relief in excess of or different in kind from that sought by the [United States]." *Quinn*, 419 F.2d at 1017 (citing *United States v. Shaw*, 309 U.S. 495 (1940)); *see also* Fed. R. Civ. P. 13(d) ("These rules do not expand the right to assert a counterclaim . . . against the United States or a United States officer or agency."). And the scope of an implied waiver is narrower even than the standard applicable to compulsory counterclaims under Rule 13(a), since the waiver of sovereign immunity is cabined by the scope of the relief requested. *Quinn*, 419 F.2d at 1017-18. Simply put, the implicit waiver through filing suit allows *only* for counterclaims that "reduce" or "defeat" the United States' claims. *Quinn*, 419 F.2d at 1017; *accord* 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1427 at 232 ("[W]hen the United States institutes an action, defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery."). "A judgment which is affirmative in the sense of involving relief different in kind or nature or exceeding the amount of the government's claim is not authorized." *United States v. Washington*, 19 F. Supp. 3d 1317, 1342 (W.D. Wash. 2000); *see also United States v. Karlen*, 476 F. Supp. 306, 309 (D.S.D. 1979) (United States brought trespass action in its own capacity and as trustee for a tribe and individual land owners; court held that defendant's counterclaims alleging trespass by tribe on a

different tract of land "fail[ed] to come within the recoupment exception of sovereign immunity").

Here, there is no implicit waiver of sovereign immunity for Counts I through VII and Count X, and these counterclaims should therefore be dismissed.

**B.     By Filing The Instant Action, The United States Has Not Implicitly Waived Its Sovereign Immunity To Counts I Through VII And Count X of the Counterclaim.**

The United States brought only two claims for relief against the Town, for trespass and ejectment, alleging that the Town continues to use and occupy tracts of land within the Reservation without valid rights-of-way under the ROW Act. Dkt. 1 at 3 ¶ 4. The United States' claims are limited to specific tracts of land underlying the four Roads. *Id.* at 2 ¶ 3. In this way, as Defendant Intervenors correctly allege, the United States has "put[] ownership and possessory interests in the land at issue." Dkt. 29 at 95 ¶ 374; *id.* at 96 ¶ 382.

But Counts I through VII and Count X assert claims that go far beyond the issues presented and relief requested by the United States. Counts I, II, and III allege that the United States violated numerous of Intervening Defendants' constitutional rights by not removing the structures that the Band placed on its trust lands to block trespassers. Dkt. 29 at 82 ¶ 272; *id.* at 84-85 ¶¶ 291-92; *id.* at 86-87 ¶¶ 310-11. These counterclaims do not assert that Intervening Defendants have an ownership or possessory interests in the tribal and allotted lands; instead, Counts I and III merely assert a "public right relating to use of the Roadways[.]" *Id.* at 82 ¶ 265, 86 ¶ 304. And Count II asserts no interests in the Roads at all. *Id.* at 83-85 ¶¶ 276-94. These claims in no way "defeat" or "reduce" the

United States' claim that the Town is in trespass because the ROWs expired and the Town is thus without a valid legal right to use or occupy the lands at issue.

Count IV alleges that the United States, in "decid[ing] not to take any action to cease" the temporary permitting system agreed to by the Town and the Band, violated Defendant Intervenors' procedural due process rights; this claim again alleges a "public" right to the Roads. *Id*. at 89 ¶¶ 331, 336. Count V takes issue with the ROW application process—specifically, that a ROW applicant is not entitled to receive a copy of the tribal-land appraisals prepared under 25 C.F.R. §§ 169.107-114. *Id*. at 91 ¶¶ 347-49. This counterclaim is entirely disconnected from the question of ownership of and possessory interests in the Roads. And Counts VI and VII also seek affirmative relief having nothing to do with the issues presented by the United States's trespass and ejectment claims. Both of these counterclaims allege that 25 C.F.R. § 169.110(a) violates Intervening Defendants' constitutional rights because it allows the Band to negotiate payment amounts for the ROWs that Intervening Defendants may disagree with. *Id*. at 92 ¶ 356, 95 ¶ 372.

Finally, Count X asks the Court to compel the United States to "implement" the TTP, *id*. at 97-99 ¶¶ 389-401. This counterclaim invokes a statutory and regulatory program that is not even raised by the United States in its complaint; indeed, the Court has previously acknowledged that the TTP is wholly irrelevant to whether the Town has failed to comply with the ROW Act and is therefore in trespass. *See Pollard*, 2023 WL 6276403, at *4 ("Nothing in the [Federal-Aid Highway] Act suggests that the [TTP] is intended to promote or protect access rights of the public or individual citizens who

-12-

want to traverse Indian lands."). And beyond that, Count X fails to allege a possessory or any other interest in the tribal lands at issue.

Because none of these counterclaims make any allegations or arguments regarding the ownership or possession of the tracts of land at issue, none of the claims could reduce or defeat the United States' claims of trespass and ejectment against the Town. *Cf. United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996) (United States brought an action for ejectment, and defendant asserted occupancy rights that would defeat the United States' claims; sovereign immunity was thus waived).[6] Indeed, Counts I through VII and Count X all seek "affirmative relief" that goes far beyond the United States' complaint. *See Quinn*, 419 F.2d at 1017-18. Intervening Defendants tacitly admit as much by explicitly alleging that Counts VIII (easement by necessity) and IX (implied easement) come within the United States' limited implied waiver of sovereign immunity, Dkt. 29 at 95 ¶ 374, 96 ¶ 382, but include no such jurisdictional statement in any of the other counterclaims. In sum, Counts I through VII and Count X do not fall within the implied waiver of sovereign immunity.

---

[6] There is a marked difference between the counterclaims the United States moves the Court to dismiss here and the counterclaims—both the Town's and Intervening Defendants'—that allege the existence of a valid easement over the Roads. *See* Dkt. 7 at 28-30 ¶¶ 17-30 (Town's Counterclaim); Dkt. 29 at 95-97 ¶¶ 373-88 (Intervening Defendants' Counts VIII and IX). Such easement claims, if successful, could interpose a valid defense against a claim of trespass. In this way, the easement claims could act to "defeat" or at least "reduce" the United States' claims of trespass. Counts I through VII and Count X, in contrast, seek relief entirely separate from the United States' trespass and ejectment claims, are not at all calculated to defeat or reduce the United States' claims, and thus do not come within the limited waiver of sovereign immunity that can be implied from the United States' suit.

**C.      Intervening Defendants Assert No Valid Statutory Waiver Of Sovereign Immunity.**

There is also no explicit waiver of the United States' sovereign immunity that authorizes Counts I through VII and Count X. Intervening Defendants expressly invoke 28 U.S.C. §§ 1331, 1346, and 1367 to establish subject-matter jurisdiction over the entire Counterclaim "because this case arises under the Constitution, laws, or treaties of the United States and the [counter]claims herein are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy." Dkt. 29 at 42 ¶ 16. They further invoke 28 U.S.C. § 1651 specifically to support subject-matter jurisdiction over Count X, their alternative claim for mandamus relief, *see id.* at 97-99 ¶¶ 389-401, and additionally assert an entitlement to relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, *see id.* at 63 ¶ 170, 101 ¶ G (prayer for relief). It is well-settled that none of the statutes on which the Intervening Defendants rely constitutes an express waiver of the United States' sovereign immunity from suit in the circumstances here.

First, 28 U.S.C. § 1331, the general federal-question jurisdiction statute, does not waive the United States' sovereign immunity from suit. See, *e.g.*, *Arvanis v. Noslo Eng'g Consultants, Inc.* 739 F.2d 1287, 1290 (7th Cir. 1984) ("No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity.").

Second, neither of the possibly relevant jurisdictional bases stated in 28 U.S.C. § 1346 waives immunity for any of Counts I through VII and Count X. The Tucker Act, 28 U.S.C. § 1346(a)(2), waives sovereign immunity in some instances, but this is not one

-14-

of them. Section 1346(a)(2) only "empowers district courts to award damages but not to grant injunctive or declaratory relief." *Lee v. Thornton*, 420 U.S. 139, 140 (1975). Here, Intervening Defendants seek no money damages, so § 1346(a)(2) provides no waiver of sovereign immunity. The same is true of 28 U.S.C. § 1346(b)(1), the Federal Tort Claims Act's waiver of immunity. *Kight v. U.S. District Court, N. District of Georgia*, 681 Fed. Appx. 882, 884 (11th Cir. 2017) ("FTCA does not waive sovereign immunity for relief other than money damages, [and] claims for injunctive and declaratory relief are thus barred"). And the Quiet Title Act's waiver, 28 U.S.C. § 1346(f), is inapposite to Counts I through VII and Count X because none of those counterclaims—in contrast to Counts VIII and IX—claim an interest in the Indian-trust and restricted-fee lands on which the Roads are situated.

Nor does the supplemental jurisdiction statute, 28 U.S.C. § 1367, independently waive sovereign immunity. *Palmer v. Comm'r of Internal Revenue*, 62 Fed. Appx. 682, 685 (7th Cir. 2003) ("§ 1367(a) cannot be used to waive sovereign immunity unless specifically allowed by Congress"). The All Writs Act also does not waive the United States' sovereign immunity, either. *Holt v. Davidson*, 441 F. Supp. 2d 92, 96 (D.D.C. 2006) ("the All Writs Act, 28 U.S.C. § 1651, . . . does not operate as a waiver of sovereign immunity"). And finally, the Declaratory Judgment Act does not itself establish subject-matter jurisdiction. *Muirhead v. Mecham*, 427 F.3d 14, 17 n.1 (1st Cir. 2005) (the statute "plainly does not operate as an express waiver of sovereign immunity"); *see also Hoelscher v. United States*, No. 17-cv-542-jdp, 2018 WL 3466936, at *2 and n.1 (W.D. Wis. July 18, 2018) ("Courts in this circuit have also consistently held that the Declaratory

Judgment Act does not include a waiver of the federal government's sovereign immunity." (citing cases)).

Intervening Defendants must show a valid waiver of sovereign immunity exists for each of their claims to establish subject-matter jurisdiction. *See Cole*, 657 F.2d at 109. None of the jurisdictional statutes on which Intervening Defendants rely constitutes such a waiver of the United States' sovereign immunity. Because Counts I through VII and Count X of the Counterclaim thus wholly lack any valid, express jurisdictional basis, the Court should dismiss each of those claims.

## II. THE COURT SHOULD DISMISS COUNTS I THROUGH VII AND COUNT X PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE INTERVENING DEFENDANTS FAIL TO STATE PLAUSIBLE CLAIMS FOR RELIEF

"A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency." *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1046 (W.D. Wis. 2018). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a cause of action and must be disregarded. *Id.* (citing *Twombly*. 550 U.S. at 555). Similarly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). In evaluating a Rule 12(b)(6) motion, the court may consider not only the facts alleged in the complaint, but also facts or documents referred to or incorporated into the complaint which are central to Plaintiff's claim, *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013), and matters of which the Court may take judicial notice, *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

### A.   Counts I And IV Of The Counterclaim Fail To State Valid Procedural Due Process Claims.

Counts I and IV allege procedural due process violations under the Fifth Amendment. A procedural due process claim cannot be maintained unless the claimant establishes that it has a constitutionally protected liberty or property interest at stake. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-72 (1972). The Supreme Court directs that "[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Forest Cnty. Potawatomi Comty. of Wisconsin v. Doyle*,

828 F. Supp. 1401, 1407-08 (W.D. Wis. 1993) ("plaintiffs must establish that they will be deprived of a constitutionally protected property or liberty interest and that defendants intend to interfere with this interest without a hearing or other appropriate process." (citations omitted)). "A property interest is a right created by 'existing rules or understandings that stem from an independent source such as state law.'" *Makhsous v. Daye*, 980 F.3d 1181, 1183 (7th Cir. 2020) (quoting *Roth*, 408 U.S. at 577). "For an interest to be constitutionally protected, a plaintiff must have a 'a legitimate claim of entitlement to it' rather than 'a unilateral expectation of it.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

Counts I and IV allege numerous interests, all of which are rooted in and stem from Intervening Defendants' purported "public right relating to use of the Roadways[.]" Dkt. 29 at 82 ¶ 265, 89 ¶ 331; *see also id.* at 81 ¶ 261 (Intervening Defendants' interests "require the Roadways, which are public, to remain open and available for public use"). Not only does a generalized right of the public to use a public road not support a procedural due process claim, but Intervening Defendants' arguments fail to account for the fact that the lands at issue here are tribal lands. As Intervening Defendants concede, *id.* at 39, ¶¶ 3-4, the Roads are located on lands that the United States holds in trust or restricted fee status for the Band and Allottees. These lands are thus, by definition, not "public." *See* Nonintercourse Act, 25 U.S.C. § 177; ROW Act, 25 U.S.C. §§ 323-328.[7] Intervening Defendants identify no independent

---

[7] Nothing in the Federal-Aid Highway Act, 23 U.S.C. § 202, or the TTP Regulations, 25 C.F.R. Part 170, including 25 C.F.R. § 170.114(a), on which the Intervening Defendants heavily rely, provides them with a constitutionally protected property interest, or otherwise changes this analysis. "Nothing in the Act suggests that the program is intended to promote or protect access

source of law that gives them any interests in tribal lands, and Intervening Defendants indeed have nothing more than a "unilateral expectation" of access to the Roads, based on decades of use, made possible by the then-valid ROWs. Any interests Intervening Defendants may have in their own respective properties near or abutting the regulated tribal land, but not itself regulated by the ROW Act, do not suffice to create a property or liberty interest supportive of a procedural due process claim.

Intervening Defendants fail to demonstrate a protectible interest in the Roads, but nevertheless claim a right to process. But process for process's sake alone does not create a valid Fifth Amendment due process claim. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). In the absence of a constitutionally protected property or liberty interest, Intervening Defendants do not—and cannot—state a procedural due process claim for relief under the Due Process Clause. Counts I and IV should therefore be dismissed.

### B. Count II Fails To State A Plausible Substantive Due Process Claim.

Count II alleges that, by not removing the barricades put up by the Band on tribal lands, the United States violated Intervening Defendants' substantive due process rights.[8] Defendants, however, fail to establish a property or other interest in these lands

---

rights of the public or individual citizens who want to traverse Indian lands." *Pollard*, 2023 WL 6276403, at *4.

[8] Confusingly, Count II appears to attempt to piggyback a procedural due process claim onto its substantive due process arguments. Dkt. 29 at 85 ¶ 294. Because Count II fails to make any cognizable procedural due process argument, and because Count II is labelled as a substantive due process claim, the United States will treat it as such.

that could provide the predicate for such an affirmative federal duty. The doctrine of substantive due process under the Fifth Amendment "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations omitted). "Substantive due process protects against only the most egregious and outrageous government action." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (citations omitted).

"[T]he scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). To determine whether a claimant's substantive due process rights have been violated, a court must first determine if the alleged right is fundamental—i.e., "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Glucksberg,* 521 U.S. at 721. If the alleged right is fundamental, any government regulation of that right must be narrowly tailored to serve a compelling government interest. *Id*. However, if the alleged right is not fundamental, government regulation need only be rationally related to a legitimate government purpose. *Id.* at 728. Courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended.'" *Lukaszczyk v. Cook Cnty*, 47 F.4th 587, 599 (7th Cir. 2022) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). As such, a "careful description" of the liberty interest at stake should be provided, so to avoid "sweeping abstractions and

-20-

generalities." *Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) (quoting *Glucksberg*, 521 U.S. at 722).

Count II alleges that the United States violated Intervening Defendants' "freedom from bodily restraint" by not deconstructing the barriers put up by the Band on tribal land. Dkt. 29 at 83 ¶ 279, 84-85 ¶¶ 291-92. The case law regarding substantive due process violations through unconstitutional bodily restraint is normally presented in the context of prisoner and parolee rights, *cf. Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law."); *Wells v. Franzen*, 777 F.2d 1258, 1262-63 (7th Cir. 1985), or involuntary commitment, *cf. Youngberg v. Romeo*, 457 U.S. 307, 314-16 (1982). But Intervening Defendants desire to cross and use property in which they lack title or any interest. *See* Dkt. 29 at 39 ¶¶ 3-4. In the absence of a valid right-of-way or other property interest, Intervening Defendants' argument does not square with notions of unconstitutional bodily restraint.

Indeed, expansion of substantive due process principles to recognize an unfettered "right to be free from bodily restraint without undue government restriction," *id.* at 83 ¶ 279; "right to freedom of movement and to travel without undue government restriction," *id.* at 83 ¶ 280; "right to establish a home without undue government restriction," *id.* at 83 ¶ 281; and "right of personal liberty without undue government restriction," *id.* at 84 ¶ 282, in using tribal lands without a valid right-of-way would contravene the ROW and Nonintercourse Acts. And although some courts have found a fundamental right to certain intrastate travel, there is no fundamental

right to travel anywhere one desires at any time, regardless of who holds title to the property at issue. *E.g.*, *City of Lafayette*, 377 F.3d at 770 (rejecting argument that claimant's ability to enter a public park to "loiter" was a "fundamental" right).

There is no question that Congress has the authority to protect and regulate access to and the conveyance of tribal lands and interests in those lands. 25 U.S.C. § 177; 28 U.S.C. §§ 323-328; *Oneida I*, 414 U.S. at 667 ("Once the United States was organized and the Constitution adopted, these tribal rights to Indian lands became the exclusive province of the federal law."). Moreover, there is no substantive due process right to access and use tribal lands. *Cf. United States v. Univ. of N.M.*, 731 F.2d 703, 706 (10th Cir. 1984) ("The Indian Nonintercourse Act . . . imposes on the federal government a fiduciary duty to protect the lands covered by the Act."). There thus can be no substantive due process violation where, as here, federal regulation indirectly affects Intervening Defendants' alleged property interests in their properties that abut tribal lands – particularly where such regulation is in a space of congressional plenary power. *Cf. O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980) ("due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action"). For all of these reasons, Intervening Defendants' ill-defined and far-reaching alleged liberty interests fail to support a substantive due process claim and should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## C.    Counts III And VII Fail To State Valid Takings Claims.

Count III alleges that, by failing to remove the barricades put up by the Band on tribal lands, the United States has "depriv[ed] [Intervening Defendants] of their private property for a public use without just compensation." Dkt. 29 at 87-88 ¶ 319. Count VII alleges that the United States is liable for a taking because 25 C.F.R. § 169.110 gives the Band discretion to seek any amount of compensation that the Band deems appropriate for a right-of-way across its lands, which is "directly causing the [Intervening Defendants'] inability to obtain new rights of way for the Roadways." *Id.* at 95 ¶ 372. As for a remedy, Intervening Defendants do not seek money damages, but rather a declaration that 25 C.F.R. § 169.110 violates the Takings Clause as applied to them, and an order that the BIA "issue new rights-of-way for the Roadways upon [Defendant Intervenors'] payment of fair market value[.]" *Id.* at 100 ¶ D.6 (prayer for relief).

Counts III and VII fail for numerous reasons. As an initial matter, Fifth Amendment takings claims are remedied through damages, not equitable relief. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176-77 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) (equitable relief is not available for a takings claim when a suit for compensation could be brought). A takings claim is a remedy for a taking; it does not "prevent[] the violation from occurring in the first place." *Knick*, 139 S. Ct. at 2177; *see also Stop the Beach Renourishment v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 741 (2010) (Kennedy, J., concurring) ("It makes perfect sense that the remedy for a Takings Clause violation is

only damages, as the Clause does not proscribe the taking of property; it proscribes taking without just compensation." (citation omitted)). Intervening Defendants, however, seek only equitable relief, not damages. The Court should thus dismiss both Counts III and VII pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See Green v. USFS*, No. 20-cv-046-LAB-SBC, 2023 WL 5280912, at *3 (S.D. Cal. Aug. 16, 2023) ("A takings claim seeking injunctive relief can be dismissed for failure to state a claim under Rule 12(b)(6).").[9]

Counts III and VII are also not viable claims because Intervening Defendants do not concede that any governmental action was "valid and authorized." *Wagstaff v. United States*, 105 Fed. Cl. 99, 110 (2012) ("As a matter of law, however, a taking only occurs when the underlying governmental action is valid and authorized."). "Before a compensable taking can be found by the court, there must be some congressional authorization, express or implied, for the particular taking." *S. Cal. Fin. Corp. v. United States*, 634 F.2d 521, 523 (Ct. Cl. 1980), *cert. denied*, 451 U.S. 937 (1981). The claimant must therefore concede "the validity of the government action which is the basis of the taking claim." *Tabb Lakes Ltd. v. United States*, 10 F.3d 796, 802-803 (Fed. Cir. 1993). Intervening Defendants allege that the United States worked a "taking" by "failing to deconstruct barricades on the Roadways," Dkt. 29 at 87-88 ¶ 319, and because the Part 169

---

[9] The Seventh Circuit has identified limited instances when equitable relief may be available for a takings claim—namely, when "the government has taken property for a private, rather than a public, use" and when a "facial challenge[ ] to legislative action authorizing a taking" is possible. *Sorrentino v. Godinez*, 777 F.3d 410, 414 (7th Cir. 2015). Simply because there has been no taking of Intervening Defendants' property, *see infra* at 25-26, nor any legislation authorizing such a taking, the circumstances do not warrant application of either exception here.

regulations allow the Band to negotiate payments for rights-of-way in amounts that that Intervening Defendants disagree with, *id.* at 95 ¶ 372. Intervening Defendants, though, do not concede that the United States' actions (or alleged inactions) were valid. In fact, they allege the contrary. *Id.* at 86-87 ¶¶ 305-11, 95 ¶ 372. The Court should dismiss Counts III and VII for failure to state valid takings claim on this basis as well.

Lastly, there has simply been no taking here. Intervening Defendants fail to establish a property interest in the ROWs or land beneath the ROWs. As a result, the United States did not take—and could not have taken—any private property without just compensation. *See RDB Properties v. City of Berwyn*, 844 Fed. Appx. 878, 880 (7th Cir. 2021) (outlining the types of takings that can occur). Nor did the United States deprive Intervening Defendants of beneficial use or exact a regulatory taking. Instead—and what Intervening Defendants really take issue with—the United States enacted in 1948 the ROW Act, establishing a right-of-way application process for grants of access to tribal lands. 25 U.S.C. §§ 323-328. This application process preserves Tribes' and individual Indian allottees' rights to negotiate compensation for rights-of-ways on their respective lands. That the Town failed to secure continued right-of-way access to the Roads under the congressionally-mandated process before the ROWs expired cannot conjure a taking by the United States here.[10] In turn, the Band exercised one of the most

---

[10] At least some of Intervening Defendants seem to understand that, to whatever extent a taking of their property might have occurred, the Town was likely the responsible party. *See* Complaint, *Hornbostel v. Town of Lac du Flambeau*, Vilas County Case No. 2023-cv-000068, at 10 ¶ 42 (filed July 14, 2023) ("By failing to secure permanent, unrestricted public road access for [plaintiffs] and other property owners affected by the barricades, the Town has taken Property without providing just compensation."); Complaint, *Beer Jr. v. Town of Lac du Flambeau*, Vilas County Case No. 2023-cv-000078, at 10 ¶ 42 (filed July 31, 2023) (same).

"essential sticks in the bundle of rights that are commonly characterized as property" — the "right to exclude others" — to protect its lands. *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979); *see also Univ. of N.M.*, 731 F.2d at 706 ("The Indian Nonintercourse Act . . . acknowledges and guarantees the Indian tribes' right of possession [of Indian lands][.]"). There has been no taking here, let alone an unconstitutional taking by the Federal Government. For all these reasons, Counts III and VII do not state claims on which relief can be granted.

**D.    Count X Fails To State A Cognizable Mandamus Claim.**

Count X requests mandamus relief, seeking to "compel" Interior to "implement the TTP, specifically 25 C.F.R. § 170.114(a)[.]" Dkt 29 at 97 ¶ 390. A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary cases." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 524 U.S. 367, 380 (2004) (citations omitted). To obtain a writ, Intervening Defendants must demonstrate (1) they have no other means to obtain the relief; (2) their "right to issuance of the writ is clear and indisputable"; and (3) issuance of the writ is "appropriate under the circumstances." *Id.* at 380-81 (citations omitted). Intervening Defendants allege that § 170.114(a) requires the Roads to remain open for public use (despite there being no valid grants of easement for right-of-way for any of the Roads) and that Interior has a "nondiscretionary duty" to deconstruct barricades on tribal land and halt the temporary access permits negotiated between the Band and the Town. Dkt. 29 at 97 ¶¶ 390-91. No matter how Intervening Defendants assert this Administrative Procedure Act ("APA") claim, *see Anderson v. Newland*, No. 23-cv-777-wmc (W.D. Wis.) (separate APA case, in which some of the Intervening

Defendants allege that the Roads are public under 25 C.F.R. § 170.114(a)), Count X does not meet the high standard for a writ of mandamus and fails as a matter of law.

Section 170.114(a) provides, *inter alia*, that "[a]ll Tribal transportation facilities listed in the approved NTTFI must be open and available for public use[.]" A "tribal transportation facility" is "a public highway, road, bridge, trail, or transit system that is located on or provides access to tribal land and appears on the [NTTFI] . . . ." 23 U.S.C. § 101(a)(33). Thus, § 170.114(a) applies only to facilities that are listed on the NTTFI. *See* 25 C.F.R. § 170.5 (further defining the NTTFI). And the regulations provide Tribes with the authority to update the NTTFI to, among other things, remove a road from the NTTFI, by submitting the update to the BIA. 25 C.F.R. § 170.444(b). That is exactly what happened here. From 2001 until March 24, 2023, the Roads were listed on the Indian Reservation Roads Inventory and NTTFI, at the request of the Band.[11] On March 15, 2023, the BIA received Resolution No. 69(23) from the Band, requesting that the NTTFI be updated to remove the Roads. On March 30, 2023, the BIA notified the Band that, pursuant to 25 C.F.R. § 170.444(b) and effective March 24, 2023, the BIA carried out the ministerial act of removing the Roads from the NTTFI. The Roads are no longer on the NTTFI, and thus not subject to 25 C.F.R. § 170.114(a). Intervening Defendants, therefore, have no clear and indisputable right to a writ.

---

[11] "[T]he Secretary *shall include* [in the Inventory], at a minimum, [roads] that are eligible for assistance under the [TTP] *that an Indian tribe has requested*[.]" 23 U.S.C. § 202(b)(1)(B) (emphasis added). While any public road located on or providing access to tribal lands may be included in the NTTFI, the TTP is tribally-driven and nothing in federal law or regulations requires a Tribe to request that all, some, or no roads be added to the NTTFI.

25 C.F.R. § 170.114(c) does not save Intervening Defendants' Count X, either. That subsection states that "[a] Tribal transportation facility owned by a Tribe or BIA may be permanently closed only when the Tribal government and the Secretary agree." But the subsection deals with roads "owned"—*i.e.*, operated and maintained by—the respective Tribe or the BIA only.[12] Because the Town was listed as the public authority responsible for operating and maintaining the Roads, not the Band or the BIA, § 170.114(c) does not apply here. Intervening Defendants' demand that Interior "implement" that regulation therefore falls short of stating a claim for which relief can be granted and should be dismissed.

###### E.     Counts V And VI Fail To State Cognizable Due Process Claims.

Finally, Counts V and VI should be dismissed pursuant to Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct." "The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) (quoting *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir.), *cert. denied,*

---

[12] "Transportation and other officials generally use the term 'owner' or 'road owner' when referencing the public authority that is responsible for . . . maintaining a [public] road or transportation facility"; however, "NTTFI data should not be used for determining real property ownership." Bureau of Indian Affairs, *Rights-of-Way on Indian Lands Handbook*, 52 IAM 9-H at 4 (Office of Trust Services Jan. 10, 2022) (publicly accessible at: https://www.bia.gov/sites/default/files/dup/assets/public/raca/handbook/pdf/52%20IAM%209-H%20ROW%20HB%20_FINAL_signed_w.footer_Jan%202022_minor%20corrections_508.pdf.)

510 U.S. 868 (1993)). A complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what it is that the pleading party asserts. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). "A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom*, 20 F.3d at 775-76 (119-page, 385-paragraph amended complaint was an "egregious violation of Rule 8(a)"; the complaint was "confusing, redundant, and seemingly interminable," and thus "violated the letter and the spirit of Rule 8(a)"). District courts can dismiss complaints that are confusing due to length and lack of clarity. *See Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003). Complaints prepared by counsel are, of course, held to a more stringent standard than those prepared without. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).

Buried in the 400-paragraph Counterclaim lie Counts V and VI. Dkt. 29 at 90-93 ¶¶ 341-359. These counterclaims allege "due process" violations on the basis of Intervening Defendants' inability to "know the value of the lands on which the public roads are located," *id.* at 91 ¶ 349, and 25 C.F.R. § 169.110's alleged "authorization of an unaffordable payment amount" for rights-of-way over tribal lands, *id.* at 93 ¶ 359. Neither claim specifies whether it is a procedural or substantive due process claim. Rather, both claims vaguely allege "property and liberty interests in and relating to the public Roadways . . . ." *Id.* at 91 ¶ 349, 93 ¶ 359. The other counterclaims—while problematic and subject to dismissal for numerous reasons—at least provide information regarding the type of claim Intervening Defendants attempt to assert. That

Counts V and VI are void of any such label or information beyond "due process," and are bereft of any language that suggests what specific type of claim is asserted, makes these counterclaims impermissibly vague, moving targets. It should not be the United States' (and this Court's) burden to speculate about what precisely the Intervening Defendants are alleging in Counts V and VI. *See, e.g.*, *Gunn v. Kentucky*, No. 05-cv-28-JBC, 2005 WL 1079293, at *2 (E.D. Ken. Apr. 18, 2005) (confusing claims "handicap[] the defendants and effectively mak[e] them unable to fairly defend the lawsuit"). Because Counts V and VI lack the clarity required for the United States to fairly respond to them, those claims should be dismissed pursuant to Fed. R. Civ. P. 8(a) and 8(d)(1).

Even when viewed in the most favorable light, the interests Intervening Defendants allege in Counts V and VI could not support any plausible due process claim. These counterclaims allege illusory "property and liberty interests in and relating to the public Roadways . . . ." Dkt. 29 at 91 ¶ 349, 93 ¶ 359. Even if the Roads were "public" (which they are not because they are situated on tribal-trust and restricted-fee land the United States holds for the benefit of the Band and the Allottees), "courts have held that members of the public do not have a property interest in public roads, even if their land abuts the road." *Garcia v. Purdy*, No. 13-cv-0234 MCA/KBM, 2014 WL 12796880, at *11 and n.4 (D.N.M. Mar. 11, 2014) (citing *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978)). A member of the public's right to use a public road thus is not itself an interest in property sufficient to support a due process claim. For this reason, even if the Court finds that Intervening Defendants have met their pleading

burden under Fed. R. Civ. P. 8, the Court should dismiss Counts V and VI for failure to state claims for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Because the United States has not waived its sovereign immunity as to Counts I through VII and Count X, the Court should dismiss those counterclaims pursuant to Fed. R. Civ. P. 12(b)(1). Alternatively, the Court should dismiss those counterclaims for failure to state plausible claims for relief pursuant to Fed. R. Civ. P. 12(b)(6).

DATED:  December 26, 2023

Respectfully submitted,

TIMOTHY M. O'SHEA, United States Attorney
Western District of Wisconsin

TODD KIM, Assistant Attorney General
Environment and Natural Resources Division

  */s/ Hillary K. Hoffman*
HILLARY K. HOFFMAN, Trial Attorney
Minnesota Bar No. 0402027
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-3147
Fax: (202) 305-0275
Email: hillary.hoffman@usdoj.gov

      */s/ Samuel D. Gollis*
SAMUEL D. GOLLIS, Trial Attorney
Massachusetts BBO No. 561439
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel.: (303) 844-1351
Fax: (303) 844-1350
Email: samuel.gollis@usdoj.gov

*Attorneys for the Federal Defendants*

OF COUNSEL:

KARA G. PFISTER, Senior Attorney
Office of the Solicitor – Northeast Region
United States Department of the Interior

ANDREW S. CAULUM, Senior Attorney
Office of the Solicitor – Division of Indian Affairs
United States Department of the Interior